THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. 1991 CHEVROLET CAMARO, VIN 1GFP23E9ML117842, Defendant (Joseph R. Boehm, Respondent and Claimant-Appellee; Edwin R. Boehm, Respondent).

Second District   No. 2—91—1380

Opinion filed September 16, 1993.

Daniel A. Fish, State's Attorney, of Dixon (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Rolfe F. Ehrmann, of Ehrmann, Gehlbach, Beckman & Lee, of Dixon, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

The State appeals from the denial of its request for the forfeiture of a 1991 Chevrolet Camaro which request the State's Attorney of Lee County brought by complaint filed February 2, 1991, pursuant to the provisions of the Criminal Code of 1961 (Ill. Rev. Stat. 1991, ch. 38, par. 36—1 *et seq.* (now 720 ILCS 5/36—1 *et seq.* (West 1992))). The complaint alleged that the Camaro was used in the commission of a burglary and was "owned" by Edwin R. Boehm, respondent, and "titled" in the name of Joseph R. Boehm, respondent and claimant.

In their answer, Joseph and Edwin Boehm denied the State's allegations. Joseph, Edwin's father, filed a counterclaim alleging that he was an owner of the automobile and did not know or have reason to know that the vehicle was used in the commission of an offense, and he sought the release of the vehicle. Following a forfeiture hearing on November 14, 1991, the court denied the forfeiture in its memorandum decision and order dated November 20, 1991. The court relied on *People ex rel. Barra v. Wiebler* (1984), 127 Ill. App. 3d 488. The State timely appealed, and the order was stayed.

On appeal, the State essentially argues that, because Edwin exercised dominion and control over the vehicle, he, and not his father Joseph, was the true owner of the vehicle. The State therefore argues that it was error for the trial court to deny the forfeiture. We affirm.

At the hearing on November 14, 1991, Joseph testified that he was listed on the vehicle's corrected title with his son Edwin. The 1991 Camaro was purchased on February 1, 1991, the day before the

burglary took place. When Joseph received the title, he noticed that his name was not listed, and he returned to the salesman, Jim Beardin, to have the title corrected. Joseph and Edwin had purchased the car with cash belonging to both of them. They had received the cash from insurance proceeds following the death of Edwin's mother. It was intended that the car be used by the family. Edwin was 18 years old and was in school at the time. The application for automobile insurance listed Joseph and his wife Debra, Edwin's stepmother, as the principal drivers of the Camaro. The insurance was purchased when the Camaro was purchased. Joseph stated that Debra was the primary driver. Edwin could use any of the vehicles when he asked permission to do so.

Joseph testified that he had no knowledge nor did he have any reason to know that Edwin would be using the Camaro in connection with a burglary. Joseph did not know that the car had been used in the burglary for quite some time afterwards when Edwin was charged with the offense. For the first two months after the purchase of the Camaro, Edwin used the Camaro as well as a Buick diesel car; Edwin was listed as the principal driver of the Buick. He could not use a third family car because it had a clutch drive.

On cross-examination, Joseph stated that the car was purchased with cash from the insurance proceeds received after the death of Edwin's mother; the cash was deposited in a bank account. The proceeds were not restricted to the use of Edwin or designated for a particular use. Joseph had control of the funds. Joseph and Edwin looked at cars together and decided to buy the Camaro. Between February when the car was purchased and August when it was seized, Joseph used it about four times; Debra used the car whenever she needed to. Joseph usually drove his truck. Joseph acknowledged that Edwin had told Detective Gardner on August 9, 1991, that the title was put in Joseph's name for insurance purposes. However, Joseph pointed out that Edwin could drive the car as he was also insured, but Edwin was not the primary driver. Edwin was not arrested the day after the burglary, and Joseph only became aware of Edwin's arrest two months later.

The insurance proceeds were the result of a settlement from the driver of a car involved in an accident which resulted in the death of Edwin's mother. The insurance check was made out to both Joseph and Edwin, and the funds were placed in a Rochelle bank account in both names; Joseph commingled his own funds with the proceeds in the account.

The State called Detective Steve Gardner, who testified that he was involved in seizing the car in August 1991. In performing an inventory of the car, Gardner found items which he believed belonged to Edwin, namely, a quantity of cassette tapes, a black leather coat, and a "fuzz buster." Over the claimant's hearsay objection, Gardner was allowed to state that Edwin had told Gardner the items were Edwin's. Gardner also testified that, in a conversation between Gardner and Edwin on August 9, 1991, Edwin said that he owned the car and that the father's name was on the registration and title only for insurance purposes. In the statement, which was read into the record, Edwin also said he was the exclusive operator of the vehicle.

On cross-examination, Gardner admitted that the items did not have Edwin's name on them and that Edwin made the statements as part of an interrogation regarding the factual circumstances of the burglary.

In rebuttal, Edwin testified that he was responding to questions as part of an interrogation directed to the facts of the burglary. When he answered regarding the use of the names for insurance purposes, he was concerned for his father. Edwin stated, "I didn't want to drag him into it. He didn't know I did it [the burglary]."

After considering the arguments of counsel, the trial court denied the State's request for forfeiture of the Camaro. Before rendering its memorandum decision and order, the court observed that, under the statutory forfeiture scheme in issue, a lienholder could easily avoid a forfeiture. By contrast, a car in which there is a clear title appeared to the court to be more readily subject to forfeiture presumably because of the difficulties in determining the requisite ownership interest. In its written decision, the court found that the title of the vehicle was in the name of both the father and the son; the court observed that and the State conceded that, where a vehicle is registered to more than one person, the persons named in the title are statutorily presumed to be joint tenants of the vehicle (see 625 ILCS 5/3—107.1 (West 1992)).

The trial court found the facts similar to those in *People ex rel. Barra v. Wiebler* (1984), 127 Ill. App. 3d 488, where the vehicle was titled in the father's business, a sole proprietorship, and the defendant-son used the vehicle to commit a crime without his father's knowledge. The *Barra* court affirmed the lower court's decision to deny forfeiture based on the evidence that the father's business was a true owner of the vehicle.

Quoting *Barra,* the trial court in the present case observed that section 36—2 of the Code:

"[P]lainly allows a joint titleholder of record to show at a forfeiture hearing that he neither knew *nor had reason to know* of the vehicle's connection to criminality. The plain language of the statute evidences a legislative intent to provide a joint tenant with the opportunity to prove he should not be charged with another joint tenant's guilty knowledge." (Emphasis in original.) *Barra*, 127 Ill. App. 3d at 491. See Ill. Rev. Stat. 1991, ch. 38, par. 36—2 (now 720 ILCS 5/36—2 (West 1992)).

The trial court here concluded that the criminality of one joint owner should not be imputed to any other joint owner. The court further found that the vehicle was titled in the name of the father and the son and that the preponderance of the evidence established that the Camaro was purchased with joint funds of the father and son. The court also noted that the State conceded that the father did not know or have reason to know that the vehicle was used in the commission of an offense.

On appeal, the State argues that Joseph's interest in the vehicle is that of a bare titleholder and that his interest is either nonexistent or so minimal as not to prevent a forfeiture as against Edwin—the "true" owner of the vehicle who exercised "dominion and control" over the vehicle.

A forfeiture proceeding is civil in nature, and, under the statute, the State must show by a preponderance of the evidence that it is entitled to the vehicle because it was used in the commission of a crime enumerated in the statute. (See *People v. Dugan* (1984), 125 Ill. App. 3d 820, 829; Ill. Rev. Stat. 1991, ch. 38, pars. 36—1, 36—1a, 36—2 (now 720 ILCS 5/36—1, 36—1a, 36—2 (West 1992)).) The Code provides certain defenses to an innocent party to avoid a forfeiture where the party has a sufficient interest in the vehicle. Section 36—2 of the Code provides that the "owner of such vessel, vehicle or aircraft or any person whose right, title or interest is of record *** may show by a preponderance of the evidence that he did not know, and did not have reason to know, that the vessel, vehicle or aircraft was to be used in the commission of such an offense." Ill. Rev. Stat. 1991, ch. 38, par. 36—2 (now 720 ILCS 5/36—2 (West 1992)).

The State must also release a vehicle to a "lienholder or secured party whose right, title or interest is of record *** if such lienholder or secured party shows to the State's Attorney that his lien or secured interest is bona fide and was created without actual knowledge that such *** vehicle *** was used or to be used in the commission of

the offense charged." Ill. Rev. Stat. 1991, ch. 38, par. 36—1a (now 720 ILCS 5/36—1a (West 1992)).

In arguing that Joseph's interest in the vehicle is insufficient to avoid a forfeiture, the State relies on *People v. Dugan* (1984), 125 Ill. App. 3d 820, *aff'd in part & rev'd in part on other grounds* (1985), 109 Ill. 2d 8, where this court distinguished between an "owner" and an apparently nominal titleholder in determining that, based on the particular evidence presented there, the "true" owner's vehicle was correctly determined by the trial court to be subject to forfeiture under the same statutory scheme. In *Dugan*, the court stated that an "owner" could be described as "one who has dominion or control over a thing, the title to which is in another." (*Dugan*, 125 Ill. App. 3d at 830, citing Black's Law Dictionary 1259 (4th ed. 1968).) The *Dugan* court also stated that "the knowledge and consent of the 'owner,' and not the title holder [*sic*] *** is paramount in determining whether a particular vehicle is subject to forfeiture." *Dugan*, 125 Ill. App. 3d at 830.

We do not believe that *Dugan* should control the case at bar. First, *Dugan* is distinguishable on its facts. The evidence in *Dugan* showed that Dugan, the defendant found to be the "true" owner, had negotiated the purchase of the car and paid the dealer $5,000 for the vehicle. The defendant returned the vehicle for repairs and later kept the vehicle for his own use for an indeterminate period of time. Sandra Martinez, the titleholder, was unemployed at the time of the purchase, had no bank account, and testified that the purchase money came from cash which she had in the house. The salesman never saw Martinez. It was undisputed that Dugan exercised dominion and control over the vehicle; additionally, the trial court specifically found not credible the testimony that the car was purchased with money saved by Martinez. The trial court's finding that Dugan was the "true" owner was affirmed on appeal as it was not against the manifest weight of the evidence.

Second, we do not read *Dugan* as broadly as the State suggests so as to require that, in all cases, an innocent titleholder's claim to avoid forfeiture will automatically fail merely because a wrongdoer who is a joint owner or joint titleholder is shown to exercise some degree of "dominion and control" over the property. To the degree that *Dugan* suggests this result, we will not follow it, and we believe that the determination in *Dugan* (that the knowledge and consent of the "owner" was paramount to that of the titleholder) was largely dependent on the particular facts of that case. Undoubtedly, the underlying concern in *Dugan* was that the sham use of a nominal titleholder who

exhibits no other indicia of true ownership might successfully defeat a forfeiture and circumvent the statute in aid of criminal wrongdoers. See *People v. Dugan* (1985), 109 Ill. 2d 8, 19.

The courts, however, must also be vigilant in construing the law to safeguard the rights of innocent persons who have truly legitimate interests in the property in issue. The law generally disfavors forfeitures, and "statutes authorizing them must be construed strictly in a manner as favorable to the person whose property is seized as is consistent with fair principles of statutory interpretation." (*People v. United States Currency $3,108* (1991), 219 Ill. App. 3d 441, 446.) The Supreme Court has recently determined that forfeitures comprise a type of punishment which is subject to the limitations of the eighth amendment's excessive fines clause, and the use of forfeiture proceedings to seize property in which nonculpable persons have legitimate ownership interests raises serious constitutional questions. See *Austin v. United States* (1993), 509 U.S. ___, 125 L. Ed. 2d 488, 113 S. Ct. 2801; U.S. Const., amend. VIII.

The word "owner" is *nomen generalissimum*, and its meaning is to be gathered from the connection in which it is used and from the subject matter to which it is applied. When the word is used in a statute, the obvious nature and purpose of the statute may indicate its meaning. (*Woodward Governor Co. v. City of Loves Park* (1948), 335 Ill. App. 528, 533.) An "owner" has been defined, for example, as one " 'who has possession of or any other interest in the property involved' " and may include one who has title and the right to the possession of the property. (*People ex rel. Foreman v. Estate of Kawa* (1987), 152 Ill. App. 3d 792, 798, quoting Ill. Rev. Stat. 1985, ch. 38, par. 15—2.) While it is true that "owner" may be used to describe "one who has dominion or control over a thing, the title to which is in another," an owner may also be described as " 'one that has the legal title or rightful title whether he is the possessor or not.' " (*Foreman*, 152 Ill. App. 3d at 798-99, quoting Webster's Third New International Dictionary 1612 (1984).) Thus, owners apparently include parties who are "entitled" to have " 'dominion or control' " of the property. *Foreman*, 152 Ill. App. 3d at 798-99 (decedent's administrator who had title and right to possession of property was "owner" for purposes of contesting forfeiture).

In examining the plain language of the statute and its application in *Barra*, it is clear to us that the *owner* of the vehicle or *any person whose right, title or interest is of record* may show by a preponderance of the evidence that he did not know or have reason to know that the vehicle was to be used in the commission of an offense and,

upon a sufficient showing, may successfully resist a forfeiture. Unlike the provision for lienholders, sections 36—2 and 36—3 of the Code do not explicitly address the issue of "bona fide" ownership interests. What constitutes a sufficient ownership interest for an innocent claimant to avoid a forfeiture appears to be a question for the trial court to resolve based on the particular facts before it.

Here, the trial court determined that Joseph's ownership interest in the vehicle was sufficient to defeat a forfeiture. As in *Barra*, the claimant's evidence showed more than a naked legal title in the property. Joseph, the father, purchased the vehicle with proceeds he had received jointly with his son and which had been commingled with funds in his bank account. The father had control of the funds, was actively involved in purchasing the car, and was a joint titleholder of record. He obtained the insurance and listed himself and his wife as the principal drivers. Joseph occasionally used the vehicle, and his wife used it anytime she wished. Joseph gave his 18-year-old son "permission" to use the vehicle and appears to have retained the right to exercise "dominion and control" over it whenever he wished to. Although the son often used the Camaro, he had his own Buick for which he was listed as the principal driver.

There is no evidence tending to show that the father's title in the vehicle was merely a sham to avoid the effect of the statute, and the State does not argue that Joseph knew or had reason to know that the vehicle would be used in the commission of a crime. The State's argument that Joseph had no legal or equitable interest in the vehicle is unsupported by the record.

In a bench trial, it is for the trial court to determine the credibility of the witnesses and the weight to be accorded to their testimony. (*Sianis v. Kettler* (1988), 168 Ill. App. 3d 1071, 1072.) The trial court is in the best position to evaluate the testimony of the witnesses and is entitled to draw reasonable inferences from the evidence. (*People v. One 1990 Chevrolet Suburban* (1992), 239 Ill. App. 3d 815, 817.) Since there was sufficient evidence to show by a preponderance that claimant was in fact an innocent "owner" of the Camaro, we cannot say that the trial court's finding was against the manifest weight of the evidence (see *One 1990 Chevrolet Suburban*, 239 Ill. App. 3d at 817).

The judgment of the circuit court is affirmed.

Affirmed.

INGLIS, P.J., and DOYLE, J., concur.