# Illinois Official Reports

## Supreme Court

***People ex rel. Hartrich v. 2010 Harley-Davidson*, 2018 IL 121636**

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* MATTHEW HARTRICH, State's Attorney of Crawford County, Illinois, Appellant, v. 2010 HARLEY-DAVIDSON (Petra Henderson, Appellee). |
| Docket No. | 121636 |
| Filed | February 16, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the Fifth District; heard in that court on appeal from the Circuit Court of Crawford County, the Hon. Christopher L. Weber, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Matthew Hartrich, State's Attorney, of Robinson (David L. Franklin, Solicitor General, Michael M. Glick and Jason F. Krigel, Assistant Attorneys General, of Chicago, and Patrick Delfino, David J. Robinson, and Patrick D. Daly, of State's Attorneys Appellate Prosecutor's Office, of Mt. Vernon, of counsel), for the People. <br><br> James A. Campion, of Campion, Curran, Lamb & Cunabaugh, P.C., of Crystal Lake, for appellee. |

Justices

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Garman, and Theis concurred in the judgment and opinion.

Chief Justice Karmeier dissented, with opinion.

Justice Burke dissented, with opinion.

**OPINION**

¶ 1      The last time this court addressed the application of the excessive fines clause of the federal constitution's eighth amendment to the civil forfeiture of personal property was our decision in *People ex rel. Waller v. 1989 Ford F350 Truck*, 162 Ill. 2d 78 (1994). In this appeal, we return to that issue.

¶ 2      After the trial court ordered the forfeiture of the claimant's motorcycle based on her husband's criminal conduct while driving it, she first raised an as-applied constitutional challenge to the Illinois civil forfeiture statute (720 ILCS 5/36-1 (West 2012)). She argued that the statute, as applied to the specific facts in this case, violated the excessive fines clause of the United States Constitution (U.S. Const., amend. VIII). Those facts showed that her husband was driving on a revoked license while under the influence of alcohol after an earlier revocation was extended due to his prior conviction for driving while his license was revoked, following multiple driving under the influence (DUI) convictions and statutory summary suspensions. The trial court rejected her claim, but the appellate court reversed. The appellate court concluded the forfeiture of the motorcycle constituted a constitutionally excessive penalty, violating the excessive fines clause of the eighth amendment. 2016 IL App (5th) 150035, ¶ 41. We reverse the judgment of the appellate court and reinstate the trial court's forfeiture order.

¶ 3      **I. BACKGROUND**

¶ 4      After midnight on April 26, 2014, a police officer in Robinson, Illinois, heard a motorcycle "revving" before observing a trike-style motorcycle make a "very wide" right turn, swerve, and nearly hit a telephone pole. The officer followed and turned on his car's emergency lights, but the motorcycle did not stop. The officer then activated his siren, but the motorcycle still did not stop. Instead, it continued to weave across the road for a total of about 12 blocks before turning into a driveway. The motorcycle was driven by Mark Henderson, whose wife, Petra, was a passenger on the back.

¶ 5      When Mark got off the motorcycle, the officer noted that he exhibited "a strong odor of alcohol," slurred speech, and poor balance. The officer placed him under arrest. A breath test revealed his blood alcohol concentration was 0.161, over twice the legal limit. Mark was charged with aggravated DUI (625 ILCS 5/11-501(d) (West 2014)) and driving with a

suspended or revoked driver's license (625 ILCS 5/6-303 (West 2014)).[1] Since 1996, his license had been summarily suspended multiple times, and his license was revoked following his 2008 DUI conviction. That revocation was extended after he was convicted of driving with a revoked license in 2012; as of April 2014, Mark's license remained revoked. The police seized the motorcycle, a 2010 Harley-Davidson, and the State filed initial and amended forfeiture complaints in the circuit court of Crawford County pursuant to section 36-1 of the Criminal Code of 2012 (720 ILCS 5/36-1(a)(6)(A)(i) (West 2012)).

¶ 6      At a December 2014 hearing on the State's forfeiture request, Mark's wife Petra, the claimant in this case, was shown to be the title owner of the motorcycle, although Mark took care of the maintenance on the vehicle. Mark also had the key fob with him throughout the night of his arrest. The evidence showed that the motorcycle could be started whenever its key fob was near.

¶ 7      The claimant and her husband provided similar descriptions of that evening's events. The claimant testified that Mark was a passenger as she drove the motorcycle to a number of bars in nearby towns. Prior to the couple's 12-block ride home from the Corner Place bar in Robinson, Illinois, he jumped on the motorcycle before her for the first time that night and started it. The claimant, who had not been drinking, initially objected to her husband driving. He, however, refused to get off the motorcycle. At the forfeiture hearing, the claimant admitted that she knew Mark was intoxicated and had no driver's license. That statement matched the account she gave to the police when Mark was arrested. Nonetheless, she allowed him to drive her home because he told her the only alternative was for her to walk. The claimant testified that she had purchased the motorcycle in 2010 for $35,000, but no evidence was adduced about its value at either the time of her husband's arrest or the forfeiture hearing.

¶ 8      After hearing the evidence and the parties' arguments, the trial court entered an order of civil forfeiture, expressly finding that the claimant's testimony was self-serving and not credible. The trial court concluded that the claimant consented to her husband driving the motorcycle even though she knew he was intoxicated and did not have a valid driver's license, making the motorcycle subject to civil forfeiture. In a posttrial motion, the claimant argued for the first time that the forfeiture order created an as-applied violation of the excessive fines clause of the federal constitution's eighth amendment. The trial court rejected her claim, and she filed a timely notice of appeal.

¶ 9      The appellate court declined to overturn the trial judge's factual findings that the claimant's testimony was not credible and that she knowingly consented to her husband driving the motorcycle that night. Nonetheless, the court reversed the forfeiture order, concluding that, in light of the claimant's limited culpability, the penalty was unconstitutionally excessive under this court's three-part test in *Waller*, 162 Ill. 2d at 89-90. We allowed the State's petition for leave to appeal pursuant to Illinois Supreme Court Rule 315(a) (eff. Mar. 15, 2016).

---

[1]Mark pled guilty to aggravated DUI on October 15, 2014. The State dismissed the charge of driving while his driver's license was revoked.

## II. ANALYSIS

¶ 11 This appeal addresses the constitutionality of the Illinois civil forfeiture statute (720 ILCS 5/36-1(a)(6)(A)(i) (West 2012)) as applied to the court-ordered forfeiture of the claimant's 2010 Harley-Davidson motorcycle. The claimant specifically alleges that the trial court's application of the civil forfeiture statute to her motorcycle under the facts of this case violates the excessive fines clause of the eighth amendment of the federal constitution (U.S. Const., amend. VIII). The claimant makes it clear that she is bringing only an as-applied constitutional challenge to the statute, not a facial one. The distinction is crucial.

¶ 12 While a successful facial challenge faces the heavy burden of establishing that a statute is unconstitutional under any possible set of facts, an as-applied challenge has the burden of showing that a constitutional violation arises from the application of the statute to a specific set of facts and circumstances. *People v. Holman*, 2017 IL 120655, ¶ 29. For that reason, the facts necessarily play a critical role in the resolution of an as-applied constitutional challenge. Both facial and as-applied challenges face the same considerable burden of clearly overcoming the strong judicial presumption that the statute in question is constitutional. *McElwain v. Office of the Illinois Secretary of State*, 2015 IL 117170, ¶ 14 (stating the presumption in the context of an as-applied constitutional challenge); *People v. Kitch*, 239 Ill. 2d 452, 466 (2011) (stating the presumption in the context of a facial constitutional challenge). In fact, our courts are obliged to construe all statutes so that they comport with the applicable constitutional provisions whenever reasonably possible. *People v. Minnis*, 2016 IL 119563, ¶ 21.

¶ 13 Because the constitutionality of a statute presents a legal question, we review the present as-applied challenge to the civil forfeiture statute *de novo*. *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20. We will, of course, continue to give deference to the trial court's underlying credibility and factual findings, reversing them only if they are against the manifest weight of the evidence. *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 433 (1991).

¶ 14 We note that the focus of the claimant's arguments has changed significantly since the forfeiture proceedings began in the trial court. In that court as well as the appellate court, the claimant relied heavily on her status as an "innocent owner," insisting that she did not knowingly consent to her husband driving the motorcycle on the night of his arrest. Both courts rejected that argument, with the appellate court concluding the manifest weight of the evidence supported the trial court's factual finding that the claimant permitted her husband to drive prior to his arrest despite knowing that he was intoxicated and did not have a driver's license. The appellate court also upheld the trial court's determination that the claimant's contrary exculpatory testimony was not credible. 2016 IL App (5th) 150035, ¶ 25. Before this court, however, the claimant has completely abandoned her prior legal argument, now openly conceding that she knowingly consented to her husband driving the motorcycle that night. After reviewing the trial record, we agree with the appellate court that the trial court's factual and credibility findings were not against the manifest weight of the evidence. Therefore, we will rely on those findings throughout the remainder of our as-applied constitutional analysis.

¶ 15 The standard for whether a forfeiture violates the federal excessive fines clause was first broadly set out by the United States Supreme Court in *United States v. Bajakajian*, 524 U.S. 321 (1998). In that case, the Court addressed the constitutionality of requiring Hosep Bajakajian to forfeit over $357,000 in cash that he willfully attempted to take out of the country without informing the United States government, in violation of a federal reporting

statute. The district court found that the forfeiture of the entire sum Bajakajian failed to report, as requested by the government, would create an "extraordinarily harsh" and "grossly disproportionate" penalty when compared to his offense, thereby violating the excessive fines clause of the eighth amendment. The Ninth Circuit Court of Appeals affirmed. *Bajakajian*, 524 U.S. at 325-26.

¶ 16    The Supreme Court agreed, holding that the forfeiture of the full amount of the cash undisclosed by Bajakajian would create an eighth amendment violation. In reaching that conclusion, the Court established the first broad analytical framework for reviewing constitutional claims brought under the excessive fines clause. After initially having "little trouble" concluding the forfeiture of the statutory amount was a "fine" for purposes of an eighth amendment analysis, the Supreme Court discussed the historical development of *in rem* and *in personam* forfeitures, as well as their differences, and concluded the federal forfeiture statute was derived from the *in personam* criminal forfeiture tradition. *Bajakajian*, 524 U.S. at 328-33. The Court then addressed what it deemed to be the "touchstone" of the excessive fines clause: proportionality. Proportionality had long required "some relationship" between the amount of the forfeiture and the gravity of the offense. Until that case, however, the Court had not "articulated a standard for determining whether a punitive forfeiture is constitutionally excessive." *Bajakajian*, 524 U.S. at 334.

¶ 17    To fill that analytical void, the Court borrowed from its own case law on the cruel and unusual punishments clause. In recognition of the " 'substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes,' " the Court expressly declined to require strict proportionality between the forfeiture and the misconduct. *Bajakajian*, 524 U.S. at 336 (quoting *Solem v. Helm*, 463 U.S. 277, 290 (1983)). Instead, it held that the proper standard for deciding if a specific punitive forfeiture was constitutionally excessive, thereby violating the eighth amendment's excessive fines clause, was if the forfeiture was "grossly disproportional to the gravity" of that misconduct. *Bajakajian*, 524 U.S. at 336-37. While continuing to recognize the traditional distinctions between an *in personam* forfeiture and the *in rem* forfeiture at issue here, the Court explained that the same "grossly disproportional" standard applies whenever a forfeiture is intended, at least in part, to impose punishment. *Bajakajian*, 524 U.S. at 332-34; *Von Hofe v. United States*, 492 F.3d 175, 184 (2d Cir. 2007).

¶ 18    Although this court has not reviewed an issue involving the excessive fines clause since the Supreme Court decided *Bajakajian*, in *Waller*, 162 Ill. 2d at 90, we relied on then-emerging federal case law to conclude that an excessive fine clause challenge required a fact-intensive, case-by-case approach. We also adopted a three-part test from the federal courts. That test required courts to weigh (1) the gravity of the offense against the harshness of the penalty, (2) how integral the property was in the commission of the offense, and (3) whether the criminal conduct " 'involving the defendant property was extensive in terms of time and/or spatial use.' " *Waller*, 162 Ill. 2d at 89-90 (quoting *United States v. Real Property Located at 6625 Zumirez Drive*, 845 F. Supp. 725, 732 (C.D. Cal. 1994)). While those factors are not exclusive, they provide the starting point for judicial review. *Waller*, 162 Ill. 2d at 90. Despite preceding the Supreme Court's decision in *Bajakajian*, the three-prong test in *Waller* largely foreshadowed both the general standard announced in that case and the factors later defined by federal case law (see, *e.g.*, *Von Hofe*, 492 F.3d at 186).

¶ 19    Here, the parties' focus is largely on the first factor, comparing the gravity of the offense to the harshness of the forfeiture. The State argues that the motorcycle's forfeiture was proportionate to the inherent dangers presented by Mark's aggravated DUI. This court has previously recognized the seriousness of the public safety threat created by the commission of a DUI, especially when the driver's license was already revoked due to a prior DUI. The legislature has also undoubtedly deemed aggravated DUI to be a serious criminal offense. See, *e.g.*, *People ex rel. Glasgow v. Carlson*, 2016 IL 120544, ¶ 28 (acknowledging the seriousness of successive DUI convictions). It is a Class 4 felony and carries a prison sentence of one to three years, with a fine of up to $25,000. 625 ILCS 5/11-501(d)(2)(A) (West 2014); 730 ILCS 5/5-4.5-45(a), 5-4.5-50(b) (West 2014). The State asserts that the claimant's culpability in this case is high because she knew her husband was intoxicated and had no license but permitted him to drive the motorcycle anyway, making her legally accountable for his criminal conduct.

¶ 20    The claimant, on the other hand, maintains that her conduct was merely negligent. She points out that she was not personally prosecuted for any offense that would have subjected the motorcycle to forfeiture.[2] According to her, an unconstitutional imbalance exists between her minimal culpability and her monetary loss due to the forfeiture. She notes that forfeiture is generally disfavored. *People v. 1991 Chevrolet Camaro*, 251 Ill. App. 3d 382, 388 (1993). She also attempts to distinguish this case from the $28,000 vehicle forfeiture approved in *People v. One 2000 GMC*, 357 Ill. App. 3d 873 (2005), by arguing that the claimant in *One 2000 GMC* pled guilty to DUI and driving on a suspended license, while here she was not prosecuted or convicted of any offense. She asserts that the case most similar to this one is a Pennsylvania decision, *Commonwealth v. 1997 Chevrolet*, 106 A.3d 836 (Pa. Commw. Ct. 2014) (*en banc*). There, the appellate court reversed an order forfeiting the homeowner's residence and minivan because they were used to facilitate $90 in controlled marijuana sales transacted by her son, who lived with her, and remanded the cause for a new forfeiture proceeding applying the proper test.

¶ 21    In our view, the Pennsylvania court's *1997 Chevrolet* decision does not help this claimant. To the contrary, that decision undermines her argument for a number of reasons. First, the degree of knowledge the two property owners had about the underlying offenses varied considerably. The homeowner in *1997 Chevrolet* consistently alleged she did not know her son was selling drugs out of her home. *1997 Chevrolet*, 106 A.3d at 844-45. In contrast, here the claimant has now abandoned the "innocent owner" defense that she maintained throughout the proceedings in the trial and appellate courts, openly admitting to this court that she knowingly consented to her husband driving the motorcycle even though she knew he was intoxicated and did not have a driver's license.

¶ 22    Second, the Pennsylvania court emphasized the unique position that personal residences hold in eighth amendment forfeiture analysis. The evidence in that case showed the homeowner had resided in her house for over 30 years. *1997 Chevrolet*, 106 A.3d at 848. The court noted that the forfeiture of a home is "not readily granted" and explained that courts have " 'traditionally drawn a distinction between one's personal property and one's home, according the latter far greater protection under the law.' " *1997 Chevrolet*, 106 A.3d at 859 (quoting *United States v. Certain Lots in Virginia Beach*, 657 F. Supp. 1062, 1065 (E.D. Va.

---

[2]The claimant was initially cited for permitting a person under the influence of alcohol to drive a motor vehicle (625 ILCS 5/6-304.1 (West 2014)), but the State later dismissed that charge.

1987)). Here, the claimant has not attempted to argue that her motorcycle warrants the same degree of heightened protection provided to personal residences, and we have found no case law to support that position.

¶ 23 Third, the Pennsylvania court expressly adopted the Second Circuit Court of Appeals' analytical framework in *Von Hofe*, 492 F.3d 175, to determine "the culpability of a property owner who is not the perpetrator of the criminal conduct that prompts the forfeiture." *1997 Chevrolet*, 106 A.3d at 860. The analysis in *Von Hofe* largely undercuts the claimant's arguments before this court. As the Second Circuit explained, in an *in rem* forfeiture such as this one, the legal fiction of the property's purported "guilt" is measured by examining "the relationship between the property and the criminal offense." *Von Hofe*, 492 F.3d at 185. Here, the relationship between Mark's aggravated DUI and the motorcycle is very close indeed; he would not have committed that offense if he had not been driving the claimant's motorcycle that night.

¶ 24 The *Von Hofe* decision also addressed the traditional distinction between *in rem* and *in personam* forfeitures. Unlike in *in personam* forfeitures, the absence of criminal charges against the claimant is not a hindrance in an *in rem* forfeiture case. An *in rem* forfeiture may withstand constitutional scrutiny even if the property owner has never been criminally charged. "Neither conviction nor even the commencement of criminal proceedings is a necessary precondition to an *in rem* forfeiture. *** Nonetheless, the culpability of a claimant is relevant to our excessiveness determination." *Von Hofe*, 492 F.3d at 185.

¶ 25 In reviewing a property owner's degree of culpability, a court must consider any "criminal conduct he or she let transpire on the property." *Von Hofe*, 492 F.3d at 185. The Pennsylvania case relied on by the claimant expressly agreed with the Second Circuit's decision to look beyond any criminal charges in considering the claimant's culpability, stating that "the property owner's culpability must be evaluated by his own knowledge and actions, not the knowledge and actions of the wrongdoer." *1997 Chevrolet*, 106 A.3d at 862. That position is, however, completely contrary to the one taken by the claimant at oral argument before this court. During oral argument, counsel for the claimant alternatively argued that Mark's criminal offense was the only relevant consideration and, after further questioning by the court, that we must look at the misconduct of both the claimant and her husband in deciding whether the forfeiture was justified.

¶ 26 Applying the *Von Hofe* analysis, we conclude that the claimant's culpability in her husband's aggravated DUI was far more than negligible. Although the claimant was not criminally prosecuted, she candidly admitted to this court that she consented to her husband driving the motorcycle on the night of his arrest despite knowing about his intoxication and revoked license. Even in the absence of that admission, however, we would have reached the same conclusion. First, the trial court determined that the claimant's exculpatory testimony during the forfeiture hearing was not credible. We afford great deference to that finding because that court was in a superior position to evaluate the testimony and credibility of the witnesses than is this court, with our review limited to a cold, written record. *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 40. We cannot say that the trial court erred in making its credibility determination.

¶ 27 Next, the forfeiture statute requires the State to establish by a preponderance of the evidence that the vehicle to be forfeited was "used with the knowledge and consent of the

owner in the commission of" one of the specified offenses, in this case an aggravated DUI, after the driver's license had been revoked for a prior DUI. 720 ILCS 5/36-1(a)(6)(A)(i), 36-2 (West 2012). At the time of Mark's arrest, he undoubtedly had been driving the claimant's motorcycle despite having a revoked driver's license for the second time and a blood alcohol concentration of over twice the legal limit in Illinois.

¶ 28    The record also shows, and the claimant now admits, that she knew of those conditions at the time she consented to her husband driving the couple home. A reasonable trier of fact could conclude that, under the facts and circumstances of this case, the claimant's conduct in knowingly granting her husband consent to drive her motorcycle was more than merely negligent. Based on the record and the deference we necessarily give to the trier of fact, we cannot say that the trial court's finding that the statutory perquisites for civil forfeiture were satisfied was against the manifest weight of the evidence. See *Kalata*, 144 Ill. 2d at 433 (specifying the standard of review for findings made by the trier of fact). The trial court's findings adequately support the conclusion that the claimant bore more than marginal culpability for both her husband's subsequent aggravated DUI and the inherent public danger it created. Accordingly, we reject the claimant's contention that she lacked sufficient culpability for her husband's criminal conduct to warrant the forfeiture of her motorcycle.

¶ 29    Nonetheless, the claimant maintains that the forfeiture of her 2010 Harley-Davidson trike motorcycle was constitutionally excessive because her financial loss from the forfeiture was disproportionately large when compared to her degree of culpability. Because we have already concluded that the evidence supports the conclusion that the claimant bore more than minimal culpability, we turn to the matter of the financial loss incurred by the claimant when her motorcycle was forfeited. The resolution of that question necessarily requires evidence about the value of the motorcycle. On that point, however, the record is woefully lacking. It shows only that the claimant originally acquired the motorcycle in May 2010 for the purchase price of $35,000 and has continued to make payments of $160 every two weeks since that time. The remaining balance due at the time of the forfeiture hearing was approximately $6000. Critically, the claimant failed to present *any* evidence on the value of the motorcycle at or around the time of the forfeiture hearing.

¶ 30    Even though the claimant did not raise her as-applied eighth amendment excessive fines clause challenge until after the trial court had entered its forfeiture order, it undoubtedly remains incumbent on her, as the party challenging the constitutionality of the forfeiture statute, to shoulder the heavy burden of rebutting the strong judicial presumption of the statute's validity and establishing the alleged as-applied constitutional violation. *People v. Rizzo*, 2016 IL 118599, ¶ 23. On that count, the claimant has fallen far short.

¶ 31    At oral argument, the claimant's counsel cited only general public knowledge and common experience in speculating that the motorcycle retained a substantial portion of its initial value despite being subject to depreciation during the four years between its purchase and its seizure by the police. Supposition, however, does not suffice to carry the claimant's burden of "*clearly* establishing" that the application of a particular statute is unconstitutional. (Emphasis in original.) *Rizzo*, 2016 IL 118599, ¶ 48. All as-applied challenges are, by definition, reliant on the application of the law to the *specific* facts and circumstances alleged by the challenger. "Therefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *People v. Thompson*, 2015 IL 118151, ¶ 37.

"The challenger cannot shift the burden of proof and research to the circuit court—it is his burden alone to overcome the presumptions of unconstitutionality, which exist for a reason." *Rizzo*, 2016 IL 118599, ¶ 48.

¶ 32    As this court explained in *Rizzo*, without an evidentiary hearing and sufficient factual findings, a court cannot properly conclude that a statute is unconstitutional as applied. Any finding of a statute's unconstitutionality as applied to a given set of facts would be premature without a sufficient factual predicate. *Rizzo*, 2016 IL 118599, ¶ 26. In this case, the record is entirely devoid of *any* evidence on the value of the motorcycle at the time of the forfeiture. Without any evidentiary predicate, this court cannot conclude that the claimant has met her substantial burden of establishing that section 36-1 is unconstitutional as applied to the specific facts and circumstances of this case. Our abeyance is further warranted by our duty to construe legislative enactments as constitutional whenever possible. *Minnis*, 2016 IL 119563, ¶ 21. We cannot shirk that duty here by intentionally overlooking the challenger's complete failure to shoulder her burden of establishing that the forfeiture ordered by the trial court under the specific facts of this case is grossly disproportionate to the property owner's culpability for her personal misconduct. The claimant has simply not met her burden of proof in mounting an as-applied constitutional challenge to the forfeiture statute at issue.

¶ 33    Nonetheless, the claimant cites our legislature's recently enacted reforms to the civil asset forfeiture scheme in Illinois to support her constitutional challenge. The new measures adopted include requiring law enforcement to provide additional public disclosures as well as mandating judicial proportionality review hearings in all forfeiture cases. At those review hearings, the State must support its forfeiture request with clear and convincing evidence, not just a preponderance of the evidence. Critically, the effective date of that legislation is July 1, 2018. Because the proceedings in this case long preceded that future date, the new requirements do not apply here. Consequently, we leave any questions addressing the interaction between the newly amended forfeiture provisions and the eighth amendment for another day and the appropriate case.

¶ 34                                III. CONCLUSION

¶ 35    Here, the trial court properly concluded that the State provided enough proof to establish the statutory prerequisites for civil forfeiture of the claimant's motorcycle by a preponderance of the evidence. 720 ILCS 5/36-1 (West 2012). The evidence showed, and the claimant now admits, that she knowingly gave her husband consent to drive her 2010 Harley-Davidson trike motorcycle even though she knew he was intoxicated and his driver's license had been revoked. That revocation was an extension of an initial revocation entered after her husband was convicted of driving with a revoked license following multiple DUI convictions and statutory summary suspensions. For the reasons previously discussed, the claimant's culpability was sufficient to subject the motorcycle to forfeiture. Moreover, because the claimant did not present sufficient evidence of the value of her 2010 Harley-Davidson trike motorcycle to enable this court to determine whether its forfeiture constituted an unconstitutionally excessive penalty, she has failed to meet her substantial burden of proof in challenging the constitutionality of the forfeiture statute as applied here.

¶ 36    For those reasons, we must reject her claim that section 36-1 of the Illinois forfeiture statute (720 ILCS 5/36-1 (West 2012)) violates the excessive fines clause of the eighth

amendment of the United States Constitution (U.S. Const., amend. VIII) as applied to the facts in this case. Due to our resolution of this matter, we need not address the remainder of the eighth amendment excessive fines clause test set out in *Waller*, 162 Ill. 2d at 89-90. Accordingly, we reverse the judgment of the appellate court that overturned the trial court's forfeiture order because the application of section 36-1 violated the eighth amendment. We reinstate the trial court's order of forfeiture.

¶ 37        Appellate court judgment reversed.

¶ 38        Circuit court judgment affirmed.

¶ 39        CHIEF JUSTICE KARMEIER, dissenting:

¶ 40        Standing alone outside the Corner Place sports bar in the middle of the night along an empty street in her small, rural town, Petra Henderson had to make a difficult choice, and she had to make it fast. Her husband, who had no driver's license and was drunk again, had stepped out ahead of her as they left the bar near closing time, jumped on her $35,000 Harley-Davidson "trike" motorcycle, and insisted, over her protests, that he be allowed to drive it home. Petra was powerless to physically stop him, and they both knew it.

¶ 41        With the resigned pragmatism one might develop from being married to a 59-year-old chronic drunk, Petra figured she had only two options. Neither one was good. If she got on her trike with her husband at the controls, she risked injury but could at least exercise some oversight to make sure he drove straight to their house, six-tenths of a mile away, without hurting the trike or anyone they might encounter along the way. If, on the other hand, she let him drive off without her, it might be safer for her (although, of course, there was still danger in her walking home alone after midnight), but her husband would be left with unsupervised control over her expensive vehicle and might simply decide to head off into the night to "who knows where," putting him, the public, and her trike at considerable risk. Revving the engine for effect, Petra's husband insisted she either get on now or she would be walking.

¶ 42        She got on. They made it safely home after a drive that could have taken no more than a couple of minutes and parked the vehicle in the driveway of their house, but it proved to be a costly decision. While the husband's engine revving was intended to pressure Petra, it also attracted the attention of local police, who followed the couple home with lights flashing and siren blaring and placed the husband under arrest.

¶ 43        Had Petra not been married to her husband, she could have been prosecuted for a Class A misdemeanor for allowing him to drive while under the influence of alcohol, an offense for which the maximum statutory fine is $2500. Because she was his spouse, however, she was not, as a matter of law, subject even to that minor offense. In the eyes of the law, she was guilty of nothing. That was not true of her husband. He was charged with multiple offenses and ultimately pled guilty to aggravated driving under the influence (DUI), for which he was fined and given probation.

¶ 44        Although no evidence was presented that the wife had any knowledge that her husband's conduct might constitute aggravated DUI and although the State never sought to implicate her in commission of that or any crime under an accountability theory, it used the husband's offense as justification to seize and then bring this *in rem* civil forfeiture proceeding against

her $35,000 trike so that it could keep and then sell the vehicle and use the proceeds to support the Robinson Police Department.[3]

¶ 45    The appellate court unanimously and correctly held that seizure and forfeiture of Petra's vehicle under the circumstances of this case were incompatible with the eighth amendment's excessive fines clause (U.S. Const., amend. VIII) and that the circuit court's judgment granting the State's forfeiture complaint must therefore be reversed. 2016 IL App (5th) 150035. A majority of my colleagues now reverses the appellate court's judgment and reinstates the trial court's forfeiture order. For the reasons that follow, the majority's disposition interprets Illinois's seizure and forfeiture statutes incorrectly, applies that law in a way that yields an absurd result the legislature could not have intended, upholds a determination by the trial court that is contrary to the manifest weight of the evidence, employs erroneous presumptions, fails to follow the proper legal framework regarding the excessive fines clause of the United States Constitution, cites erroneous authority, and ultimately reaches a result that is opposite the one commanded by the standards adopted by this court and consistently followed by the courts of Illinois in assessing whether an *in rem* civil forfeiture contravenes the excessive fines clause. For all of these reasons, I respectfully dissent.

¶ 46                                  BACKGROUND

¶ 47    The vehicle at issue in these proceedings is a 2010 Harley-Davidson Tri Glide Ultra Classic three-wheeled (trike) motorcycle owned by Petra (hereinafter the owner), who is employed as a bus driver by "Rides Mass Transit," a public transportation system in southeastern Illinois.[4] The owner had purchased the trike new for $35,000 and was making loan payments of $160 every two weeks.[5] The trike's value was not disputed by the State at trial.

¶ 48    The vehicle was titled in the owner's name alone. Although she was married, her husband (age 59 at the time of these events) did not have, had never held, and did not claim any ownership interest in the vehicle. The record showed that the owner possessed a Class M license that permitted her to operate the vehicle lawfully, and she did operate it herself. While

---

[3]Money from the sale would go to the Robinson Police Department because, under section 36-1 of the Criminal Code of 2012 (720 ILCS 5/36-2(h) (West 2012)), the proceeds from any public sale of forfeited vehicles must be paid to the law enforcement agency that seized the vehicle, less payments of any liens and deduction of the reasonable charges and expenses incurred by the State's Attorney.

[4]In its brief, the State claimed that reversing the appellate court and upholding the forfeiture of the owner's vehicle in this case is necessary to insure that the wealthy are not treated more favorably under the law than persons of more modest means. Unless Rides Mass Transit pays exceptionally well, I doubt the owner can be counted among the wealthy. So far as can be ascertained from the record, she is a regular working person. I, for one, have difficulty understanding how confiscating what is probably a working person's most valuable piece of personal property serves to prevent preferential treatment of the rich.

[5]Three-wheeled motorcycles like this one are becoming popular among more mature riders and women. Because of their comfort and stability, they have been described as being as much easy chair as Easy Rider. Jesse McKinley, *Born to Be Wild, Aging Bikers Settle for Comfy*, N.Y. Times, Sept. 13, 2012, http://www.nytimes.com/2012/09/14/us/trikes-three-wheeled-motorcycles-on-rise-as-riders-age.html.

the husband maintained the vehicle as a hobby, there was no evidence that he ever drove it, or was allowed to drive it, on public roads. He would work on the vehicle at the couple's house, taking it out of the garage and onto the lawn in front of the house when it needed service.

¶ 49    The husband had a history of alcohol abuse reflected in a criminal record dating back to the mid-1990s. At the time of the events giving rise to this action, his driver's license had been revoked for operating a motor vehicle while under the influence. The revocation had been in place many years and predated the owner's acquisition of the vehicle. The record is silent as to whether the couple's marriage came before or after the husband lost his license. While the owner was aware that her husband's driver's license had been revoked and that he was not allowed to drive, no evidence was presented by the State to establish that she had any knowledge that the basis for the revocation was a DUI.

¶ 50    On Friday, April 25, 2014, the husband got off work before the owner did and called her to suggest that they go for a pleasure drive when she returned home from work. When she agreed, he took the key fob for the vehicle from the hook where it hung in the kitchen by the back door of the couple's house so he could move the vehicle out of the garage and prepare it for the drive. The vehicle did not need an actual key to operate. The engine could be started with a switch so long as the fob was within a certain distance (8 to 10 feet) of the vehicle. The fob could be carried by either the passenger or the driver. As long as the requisite proximity was maintained, the vehicle would operate.

¶ 51    With fob in pocket, the husband checked the vehicle's tire pressure, dusted it off, started the engine, and pulled it out of the garage. As soon as the owner returned home and got ready for the drive, she took control of the vehicle, and the couple began their trip. Their route for the evening was a large (approximately 103-mile) loop beginning at their house in Robinson, then going first to the village of Oblong. From Oblong they proceeded to Lawrenceville. From Lawrenceville they drove to Palestine, and from Palestine they returned to Robinson, stopping at a sports bar near their house called the Corner Place. There is no dispute that the owner drove the entire time.

¶ 52    The couple left the Corner Place, at approximately 12:30 a.m. on April 26, 2014. As they approached the vehicle, the husband asked the owner to let him drive back home. The husband testified that she said no because he did not have a license and had too much to drink. Disregarding her objections, he jumped on first, got behind the controls, and started it up. The owner "told [him] to get off or get in the back rather. [H]e couldn't drive it." He refused, kept revving the engine "to get her to get on," and told her he intended to take it home. She could "either get on or walk." She got on. When asked if the owner had ever allowed him to operate the trike that night, he replied, "No, she didn't give me her permission. She told me I couldn't; I was too intoxicated and I didn't have a license." But he "ignored that" and insisted on driving anyway because he was "buzzed."

¶ 53    The owner did not attempt to stop her husband physically. On cross-examination, the husband said that the owner had merely told him he could not drive but explained that "she couldn't stop me dude" because "I'm stronger than she is" and "how is she going to stop me? And she didn't have the fob. I did."

¶ 54    The owner's testimony was to the same effect. She explained that as they were leaving the bar, her husband indicated he wanted to drive it home, she told him no because he was drunk and did not have a license, but he stepped ahead of her and jumped on the trike and started it

anyway. She told him he could not and needed to get in the backseat. Revving the engine, he looked at her, refused, and told her she could either walk or get on. She stated that she could not physically control him and could not have pulled him off. She concluded by stating that "No, I did not tell him that he could [drive the trike home]. I do not consent to it, no. I just did not, I just didn't want to walk home at that point." On cross-examination she confirmed that she was "adamant that he not drive the vehicle and he did this over [her] consent." She eventually stopped, she said, because "I knew there was no arguing anymore with him. He was very adamant about driving the [trike] home, and short of me walking home I decided to go ahead and get on and go from there." The husband then did drive home, with no stops or detours.

¶ 55     The trip was short. The distance between the Corner Place and the couple's house was described at trial in terms of blocks, 12 to be specific. Because "blocks" can vary significantly in size from place to place, it was not clear how far that actually was. It is well established, however, that courts may take judicial notice of distances between two or more locations and the customary routes and usual time to travel between them. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003). A check here reveals the actual distance between the Corner Place and the couple's residence to be only about six-tenths of a mile. The route is largely a straight line with some turns at the very end. It would have taken the husband only a couple of minutes to make the drive home.

¶ 56     To describe what occurred during this brief drive, the State called Dan Strauch, a Robinson city police officer. Officer Strauch was the State's only witness. He testified that, on the night in question, he was alerted to the couple by the sound of the husband's revving the vehicle's engine. He and an auxiliary officer riding with him saw the vehicle and followed it in their squad car. After observing the vehicle make a wide right turn and swerve back, nearly hitting a telephone pole, he activated his car's emergency lights and then its siren to signal the vehicle to stop. The vehicle did not stop but instead proceeded to the couple's home and drove into the driveway. On the way, Officer Strauch testified, it weaved back and forth and crossed into the oncoming traffic lane while making a left turn just before the couple's home. While erratic, the driver caused no injuries to any person and no damage to any property.

¶ 57     Once in the driveway, the husband dismounted the trike and was promptly arrested by Officer Strauch. Following the arrest, Officer Strauch interviewed the owner and asked her what the two were doing. Corroborating a statement made by the owner during her own testimony, Officer Strauch recalled that she replied that "she told him [(her husband)] to stop but he kept going." The officer also stated that, in response to his questioning at the scene, the owner indicated that she knew the husband had a revoked driver's license and that she knew he was intoxicated. On cross-examination, the officer stated that the owner had not specifically said that she had allowed her husband to drive.

¶ 58     Officer Strauch transported the husband to the Crawford County Sheriff's office, where he administered a Breathalyzer test. After the test disclosed a breath alcohol concentration of 0.161, more than twice the legal limit, the husband was charged with aggravated DUI under section 11-501(d) of the Illinois Vehicle Code (625 ILCS 5/11-501(d) (West 2014)) and driving while driver's license is suspended or revoked in violation of section 6-303 of the Vehicle Code (*id.* § 6-303). The husband ultimately pled guilty to aggravated DUI, for which he was fined and placed on probation. The charge for driving while license suspended or revoked was dismissed.

¶ 59    The owner was also charged, but she was only cited for violating section 6-304.1 of the Vehicle Code (*id.* § 6-304.1). That statute provides:

> "No person shall knowingly cause, authorize, or permit a motor vehicle owned by, or under the control of, such person to be driven or operated upon a highway by anyone who is under the influence of alcohol, other drugs, or combination thereof." *Id.*

Conviction of this offense is a Class A misdemeanor. *Id.* Under Illinois law, the maximum fine that may be imposed for conviction of a Class A misdemeanor is $2500 (730 ILCS 5/5-4.5-55(e) (West 2014)).

¶ 60    No claim has been made that the owner could have been or was charged with any other offense based on what happened on the night in question. At some point the State apparently realized that she should not even have been charged with violating section 6-304.1 of the Vehicle Code. The reason she could not be charged for that offense is contained in the statute itself. The law expressly provides that it "shall not apply to a spouse of the person who owns or has control of" the vehicle. 625 ILCS 5/6-304.1 (West 2014). It was undisputed that the husband had control of the vehicle and that the owner was his spouse. The charge was dismissed, and at no time did the State contend that she could or should be subjected to prosecution for the crimes with which her husband was charged based on a theory of accountability. So far as Illinois law is concerned, the owner committed no wrong.

¶ 61    While the owner was not the driver, was free of any wrongdoing herself, and could not be charged even with a misdemeanor given that the person in control of the trike was her husband, that did not stop the State from confiscating her vehicle. Following the husband's arrest, the police towed it from the couple's driveway and then seized and impounded it pursuant to section 36-1(a)(6)(A)(i) of the Criminal Code of 2012 (720 ILCS 5/36-1(a)(6)(A)(i) (West 2012)). That statute permits a vehicle to be seized and impounded by a law enforcement agency if it is used "with the knowledge and consent of the owner in the commission of, or in the attempt to commit," an offense prohibited by "Section 11-501 of the Illinois Vehicle Code (driving while under the influence of alcohol[, etc.,]) *** during a period in which his or her driving privileges are revoked or suspended *if the revocation or suspension was for (i) Section 11-501 (driving under the influence of alcohol[, etc.])*[.]" (Emphasis added.) *Id.*[6]

¶ 62    Following some preliminary procedural steps taken after the vehicle was seized and impounded, the State filed a complaint for forfeiture. It subsequently amended its complaint after the owner moved to dismiss based on various defects in the State's claim.

¶ 63    The State's action was an *in rem* civil proceeding. Actions for *in rem* civil forfeiture are governed by section 36-2 of the Criminal Code of 2012 (*id.* § 36-2). That provision, which was not specifically mentioned in either the amended complaint or the circuit court's forfeiture order, authorizes forfeiture of a vehicle to the State, following a hearing, where the State has shown "by a preponderance of the evidence, that such *** vehicle *** was used in the commission of an offense described in Section 36-1." *Id.*

¶ 64    In challenging the State's action, and consistent with the evidence adduced at the hearing on the matter, the owner adamantly denied that the vehicle had been used with her knowledge

---

[6]Initially, the State also predicated its claim on the allegation that the husband had been "driving while license revoked" in violation of section 6-303 of the Vehicle Code (625 ILCS 5/6-303 (West 2012)). It abandoned that prong of its claim after that charge was dismissed.

- 14 -

and consent in the commission of the offense of aggravated DUI, as asserted in the State's amended complaint. The trial court rejected that defense and ruled in favor of the State. It stated on the record that it was basing its decision on the following factors:

> (1) it was undisputed that the husband was driving on a revoked license;
>
> (2) the husband had a prior DUI conviction;
>
> (3) he had indications of being intoxicated on the night in question; and
>
> (4) "actions speak louder than words," and the owner's actions in getting on the motorcycle and allowing the husband to drive home rendered doubtful the "self-serving" testimony of the owner and her husband that she had not given him permission to drive that night.

¶ 65    After making these observations, the court asked the State to prepare and submit a draft written order, and that was so noted in the clerk's docket sheet. The judge's subsequent written order, entered the same day, included no additional findings. It merely stated that the court had found that "the vehicle is subject to forfeiture for the reasons outlined in the Amended Verified Complaint for Forfeiture."

¶ 66    Following entry of the forfeiture order, the owner petitioned the Attorney General for remission of the forfeiture pursuant to section 36-4 of the Criminal Code of 2012 (*id.* § 36-4), arguing that the events giving rise to the forfeiture involved no willful negligence or intention on her part to violate the law and that there were mitigating circumstances warranting relief. Specifically, she asserted that she had not been the driver; that her husband, who was the driver, was intoxicated and demanded that she "get on or walk home"; and that she was "powerless to act or prevent him from driving off." She further contended, among other things, that she

> "simply got on the back of the motorcycle to protect and look after her property, the motorcycle, and as well as look after her husband, to avoid him driving off on her motorcycle to who knows where, and prevent herself from walking to her home, alone, in the darkest of night, as she knew he was intoxicated and did not have a driver's license to operate her motorcycle which she had been operating the entire evening. Her simple act of getting on the back of the motorcycle that night[,] in compliance to her drunk husband's demands, did not constitute consent to allowing him to drive."

¶ 67    The owner also asked the circuit court to reconsider its forfeiture order. As grounds for that motion, she asserted that the State had failed to prove its case by a preponderance of the evidence and that she had not exercised any dominion or control over the trike after the couple had left the bar or when the stop was made by the Robinson Police Department. The motion further protested that at no time had she contemplated, authorized, or consented to her husband's operation of the vehicle and was "powerless to act against her strong husband, who was intoxicated when he drove off on the motorcycle with [her] as a passenger." The owner contended that her decision to get on the vehicle rather than walk home alone late at night "could not, and did not[,] equate to any type or kind of knowing consent." Rather,

> "she got on the motorcycle to make sure it was secure and protect it from harm, as it was her property to try and protect, as well as prevent injury to *** her husband, who was inebriated. In his intoxicated state, who knows where he would have driven off to on the motorcycle alone, if he did not have [her] as a passenger."

- 15 -

¶ 68    In addition to the foregoing, the motion pointed out that the owner, herself, did not use the vehicle to violate any criminal laws and argued that the penalty of forfeiture of the motorcycle because it was used by her husband to facilitate "a felony DUI violation, for which he pled guilty, paying his high fines and costs, and performing his probation, is an excessive fine against the owner, *** (the value of this motorcycle being in excess of $35,000), and is excessive as a fine in violation of the Eighth Amendment of the U.S. Constitution." She contended that an *in rem* forfeiture's excessiveness for eighth amendment purposes "is the relationship between the forfeited property and the offense. [The owner] never committed an offense." The motion argued that reconsideration should also be granted because the trial court wrongly construed the forfeiture statute strictly in favor of the sovereign, the Robinson Police Department, and not, as it should have, in favor of the owner and that to punish through forfeiture of this expensive vehicle because she got on the back of it and rode home "in compliance with her drunken husband's demand, which she was powerless to act against or prevent" is repugnant to the protections of the eighth amendment.

¶ 69    The circuit court was not persuaded. It rejected the owner's eighth amendment challenge simply by citing, without discussion, *People v. One 2000 GMC*, 357 Ill. App. 3d 873 (2005), where, in contrast to the situation before us here, the seized vehicle was actually owned by the person who had been convicted of driving on a suspended license and DUI. It turned aside the owner's arguments regarding the State's failure to prove its case by reasserting its view that the testimony by her and her husband that she had not consented was self-serving and not credible.

¶ 70    The owner appealed, raising both the lack of consent and eighth amendment issues.[7] The appellate court rejected the lack of consent arguments on the grounds that consent turned on credibility and the trial court's determination was not against the manifest weight of the evidence. In reaching this conclusion, the appellate court gave weight to the husband's testimony that "due to the configuration of the motorcycle, the passenger had to get on first," a statement the appellate court thought contradicted the parties' claim that the husband had mounted the trike first. 2016 IL App (5th) 150035, ¶ 25.

¶ 71    The appellate court's reading of the record was erroneous. Contrary to the appellate court's interpretation, the husband did not testify that the passenger *must* get on first. Rather, he explained the passenger gets on first for reasons of ease and convenience. "If the driver would get on first he would have to lean, she would have to lean way over for the passenger to get on."

¶ 72    The appellate court then turned to the owner's eighth amendment arguments. It agreed that "forfeiture of the $35,000 motorcycle was constitutionally excessive under all the circumstances of this case." In reaching this conclusion, the court gave weight to the fact that the harshness of the penalty, namely, seizure of the vehicle, must be measured against the conduct of the person who would actually be punished by the forfeiture, in this case the owner. It also looked at other factors, finding some that supported forfeiture and others that did not, but the key factor was the disparity between what the wife had done, "acquiescing to [the husband's] use of the motorcycle," and the penalty she suffered, loss of the vehicle. *Id.* ¶ 41.

---

[7]The record does not disclose what became of the owner's request to the Attorney General for remission of the forfeiture. Because the owner is still actively pursuing recovery of the vehicle, I assume her request was not granted.

- 16 -

¶ 73    The State petitioned for leave to appeal, which we allowed. Ill. S. Ct. R. 315(a) (eff. Mar. 15, 2016). It characterized the owner's trike as a "luxury vehicle" and argued that forfeiture of the vehicle does not violate the eighth amendment's excessive fines clause because the owner "knowingly consent[ed] to its use in the Commission of an Aggravated DUI." In addition, it asserted that while the forfeiture can withstand eighth amendment scrutiny even if the vehicle is valued at $35,000, there was no hearing on the question of valuation once the eighth amendment challenge was raised. Because of that, it contended, we should remand for further proceedings if we do not accept its argument that the appellate court's judgment should be reversed outright.

¶ 74    The owner, for her part, contended that the trial court erred in rejecting her testimony that she had not consented; that, because the vehicle belonged to her alone, the constitutional validity of the forfeiture must be assessed based on her conduct rather than the conduct of her husband; that she did not stand charged or convicted of any offense, much less one that would subject her property to forfeiture; and that, under the standards followed by the courts of Illinois, forfeiture of her vehicle would constitute an excessive fine for eighth amendment purposes and was therefore properly reversed by the appellate court. The owner opposed remand for further hearing, asserting that the record was adequate to establish that the forfeiture violated the excessive fines clause, as the appellate court had found, and that additional proceedings would only add to the harm she had already sustained while giving the State a second bite of the apple in aid of what she condemned as "policing for profit."

¶ 75    The majority now reverses the judgment of the appellate court and affirms forfeiture of the vehicle. Its opinion is wrong on the facts, wrong in its interpretation and application of the applicable state statutes, and wrong on its understanding and application of governing eighth amendment principles.

¶ 76                                ANALYSIS
¶ 77               I. *The Majority's Disposition Is Incorrect Under Illinois Law*
¶ 78                   A. *The Majority Fails to Follow the Correct Standard*
                                *for Scrutinizing Civil Forfeitures*
¶ 79    A threshold flaw in the majority's opinion is that it completely overlooks the basic legal standards governing civil forfeiture proceedings. Forfeitures are generally disfavored under the law, and courts must be vigilant in safeguarding the rights of innocent persons who have legitimate interests in the property at issue. *People v. 1991 Chevrolet Camaro*, 251 Ill. App. 3d 382, 387-88 (1993). Although civil in form, "[f]orfeiture statutes and proceedings *** are in their nature criminal. (*Boyd v. United States* (1886), 116 U.S. 616, 634, 29 L. Ed. 746, 752, 6 S. Ct. 524, 534.) The object of a forfeiture proceeding like a criminal proceeding, is to penalize for the commission of an offense against the law. (*One 1958 Plymouth Sedan v. Pennsylvania* (1965), 380 U.S. 693, 700, 14 L. Ed. 2d 170, 175, 85 S. Ct. 1246, 1250.)" *In re Fifty-Three Thousand Two Hundred Sixty Three Dollars*, 159 Ill. App. 3d 114, 126 (1987). We must therefore construe forfeiture statutes and proceedings strictly in favor of the property's owner (*id.*; *People v. One 1986 White Mazda Pickup Truck*, 251 Ill. App. 3d 79, 81 (1993), *aff'd*, 162 Ill. 2d 67; *People ex rel. Neal v. Ryan*, 284 Ill. App. 3d 318, 325 (1996)), so far as we may do so consistent with fair principles of statutory interpretation (*1991 Chevrolet Camaro*, 251 Ill. App. 3d at 388; *People v. 1991 Dodge Ram Charger*, 250 Ill. App. 3d 810, 816 (1993)).

¶ 80    The foregoing principles are fundamental to our assessment of whether the State met its burden of establishing that the forfeiture challenged by the owner in this case comported with Illinois law. If that burden was not met, the seizure and forfeiture cannot stand, and the trike must be returned to the owner. See 720 ILCS 5/36-2(c) (West 2012); *People v. One 1980 Mercedes Automobile*, 166 Ill. App. 3d 467, 469 (1988). There would be no need to consider whether the forfeiture would also violate the excessive fines clause of the eighth amendment. The majority's disposition, however, fails to give these principles even a passing reference. The omission is a fatal one, for application of these principles yields the conclusion that the seizure and forfeiture of the owner's trike cannot be sustained.

¶ 81                    B. *The Majority Fails to Properly Construe the Governing State Statutes*

¶ 82    As noted earlier, the trike was initially confiscated by the State pursuant to section 36-1(a)(6)(A)(i) of the Criminal Code of 2012 (720 ILCS 5/36-1(a)(6)(A)(i) (West 2012). That statute permits a vehicle to be seized and impounded by a law enforcement agency if it is used "with the knowledge and consent of the owner in the commission of, or in the attempt to commit," an offense "prohibited by *** Section 11-501 of the Illinois Vehicle Code (driving while under the influence of alcohol[, etc.,] during a period in which his or her driving privileges are revoked or suspended if the revocation or suspension was for: (i) Section 11-501 (driving under the influence of alcohol[, etc.])[.]" 720 ILCS 5/36-1(a)(6)(A)(i) (West 2012).

¶ 83    By its terms, this statute only authorizes law enforcement agencies to seize and impound a vehicle when the vehicle has been used "with the knowledge and consent of the owner in the commission of *** an offense prohibited by *** Section 11-501 *** during a period in which *his or her driving privileges* are revoked or suspended." (Emphasis added.) *Id.* Because revocation or suspension of driving privileges is a necessary condition under the law, it is important to know whose driving privileges the statute is talking about when it uses the pronouns "his and her."

¶ 84    A pronoun, relative pronoun, or demonstrative adjective generally refers to the nearest reasonable antecedent. Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 144 (2012). In this statute, the nearest reasonable antecedent to the pronouns "his or her" is "the owner." Indeed, "the owner" is not only the nearest reasonable antecedent to those pronouns, it is the only possible antecedent. No other person or category of persons is mentioned. To trigger the statute, the *owner's* privileges must therefore be the ones under suspension or revocation.

¶ 85    This construction poses no problem, of course, where the owner of the vehicle is one and the same as the person who has been caught driving under the influence with his or her driving privileges revoked or suspended. That more common scenario is no doubt the one the legislature had in mind when it drafted the law. But that is not the situation before us here. In our case, the owner was not using the vehicle to drive under the influence while her license was suspended or revoked. To the contrary, it is undisputed that the owner herself was not driving, that she was not under the influence, and that her license was not suspended or revoked. The statutory conditions were therefore not met as a matter of law, and the vehicle must be released to her.

¶ 86    Of course, one can speculate that the legislature meant "his or her" to refer not simply to the owner but to extend more broadly to include anyone who might be driving the owner's

vehicle. But that is not what the statute says. It is fundamental that we may not rewrite a statute under the guise of statutory construction to add provisions the legislature did not include. *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 15. And to the extent the statute is ambiguous, the previously discussed rules of strict construction applicable to forfeiture statutes mandate that any uncertainty be resolved in favor of the property owner and against the State.

¶ 87     This is not the only barrier to the State's claim posed by the forfeiture statutes. To return to the portion of section 36-1 at issue in this case, it specifies that the vehicle must have been used with knowledge and consent of the owner in the commission of an offense prohibited by section 11-501 of the Vehicle Code (625 ILCS 5/11-501 (West 2014)), not merely during a period in which his or her driving privileges are revoked or suspended but during a period in which his or her driving privileges have been revoked for one of four specified offenses. 720 ILCS 5/36-1(a)(6)(A) (West 2012).

¶ 88     In this case, the particular prior offense alleged as being the basis for the revocation or suspension was the husband's prior conviction for driving under the influence under section 11-501 (625 ILCS 5/11-501 (West 2014)). Accordingly, even if, for the sake of argument, the reference to "his or her" in section 36-1 of the Criminal Code could legitimately be construed as extending to any user of the owner's vehicle and was not limited to the owner himself or herself, the statute, by its terms, would require that the State prove that the owner had knowledge of and gave consent to the vehicle being used (a) in the commission of the offense of driving under the influence and (b) while the driver's license had previously been suspended or revoked for the same offense, driving under the influence. Correspondingly, under section 36-2(e) of the Criminal Code of 2012 (720 ILCS 5/36-2(e) (West 2012)), the owner could defeat forfeiture and recover the vehicle if he or she could establish by a preponderance of the evidence that he or she did not know and did not have any reason to know that the vehicle would be used in the commission of the offense that served as the predicate for the State's action, namely, aggravated driving under the influence based on her husband's driver's license having been previously suspended or revoked for driving under the influence. See *People ex rel. Barra v. Wiebler*, 127 Ill. App. 3d 488, 490-91 (1984).

¶ 89     There was no dispute that the owner in this case knew her husband was too drunk to drive, nor was there any real question that she knew or had reason to know that he would be subject to prosecution for driving under the influence if he drove her trike home on the night in question. The owner also freely admitted that she knew that her husband had lost his driver's license. Critically, however, the record fails to show, and the State made no attempt to prove, that the owner had any idea *why* her husband had lost his license, much less that she knew he had lost it because of a prior DUI conviction. To impute such knowledge to her would require pure speculation unsupported by any evidence. The couple was married, to be sure, but we do not know for how long, and in any case, observation and experience in the ordinary affairs of life counsel that chronic drunks can rarely be counted on to make full disclosure to their wives regarding the details of their encounters with the law.

¶ 90     This gap in proof presents an insurmountable barrier to the State's case. As the State concedes in its brief, the "law does not permit forfeiture for every instance of drunk driving." Indeed, Illinois law does not permit the State to bring even misdemeanor charges against a spouse like the owner here, who, at most, merely permitted her husband to drive her vehicle

while under the influence of alcohol. 625 ILCS 5/6-304.1 (West 2014). Under the controlling statutes, the viability of the State's forfeiture claim depended on her knowing or having reason to know that her husband's conduct in driving her trike would constitute aggravated driving under the influence and that she nevertheless consented to such use. Again, evidence of such knowledge is completely lacking. The contention made by the State in its brief that "there is no question here that [the owner] had full knowledge of [her husband's] illegal conduct" is simply wrong. The majority's assertion that the "record also shows, and the claimant now admits" that she knew the reason her husband's license was revoked for a prior DUI and that he would be subject to conviction for aggravated DUI (*supra* ¶ 28) is likewise groundless. The owner admitted nothing of the kind, and the record shows no such thing.

¶ 91                              C. *The Majority's Analysis of the Issue of Consent*
                                      *Is Legally and Factually Wrong*

¶ 92                                  1. *Consent Was Not Conceded*

¶ 93        Not only did the State fail to establish the requisite knowledge on the part of the owner, it failed even to meet its burden of proving that the owner had consented to her husband's use of her trike. Although the majority asserts that the owner had abandoned her arguments related to consent and "openly conced[es]" that she "knowingly consented to her husband driving the motorcycle that night" (*supra* ¶ 14), such is not the case. Lack of consent has been central to the owner's position throughout these proceedings, and she continued to dispute consent in her arguments before our court.

¶ 94                                  2. *Acquiescence Is Not Consent*

¶ 95        It is true that during oral argument, the owner's attorney stated that his client did not contest that she had "allowed" her husband to drive her trike home on the night in question, knowing him to be drunk, but that was never really contested. The owner "allowed" the husband to drive the trike home in the sense that she did not try to wrestle the fob from his pocket, where it had been since he prepared the vehicle for their evening out, or attempt to physically pull him off the vehicle or block his way and eventually gave up arguing with him to take the backseat and let her drive. As my detailed recitation of the record shows, however, the owner never, at any point, gave her husband permission to drive the trike. In the end, she simply decided to acquiesce to his drunken demands rather than be left to walk home alone in the middle of the night as he drove off "to who knows where" on her valuable vehicle. And what else could she do? Physical confrontation would have been both pointless and potentially dangerous. And even if she had had access to a phone to call 911 (and there is no evidence she did), no police response would have been fast enough to stop him from taking off, where, unsupervised, he might have done actual harm to himself, other drivers, or her trike.

¶ 96        While the majority may not care for the choice the owner made, she had no good choices, and the decision she did make, to submit in the face of her husband's threat to leave her alone on the street in the middle of the night, was one many women may have made under similar circumstances. But whether one agrees with the choice or not, the owner's decision to "allow" her husband to drive off behind the controls of her trike is not enough to subject the trike to seizure and forfeiture. The statute, by its terms, requires consent, not mere acquiescence.

¶ 97 Both the circuit court and the majority here clearly failed to appreciate that these concepts are different. Under the law, acquiescence does not constitute consent (*People v. Anthony*, 198 Ill. 2d 194, 202-03 (2001); *People v. Schmitt*, 99 Ill. App. 3d 184, 188 (1981); *People v. Kelly*, 76 Ill. App. 3d 80, 87 (1979); *People v. Green*, 358 Ill. App. 3d 456, 462 (2005); *Sparling v. Fon du Lac Township*, 319 Ill. App. 3d 560, 565 (2001)), and the State's burden to prove that consent was voluntary cannot be discharged by showing no more than acquiescence (see *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968)).

¶ 98 "No" means "no," and Illinois long ago rejected the notion that "voluntary submission by a female who still has the power to resist, no matter how reluctantly yielded, amounts to her consent to the act." *Schmitt*, 99 Ill. App. 3d at 188. The majority's opinion takes us backwards to a time when some thought otherwise. I will not go there with the majority. The owner acquiesced. She did not consent.

¶ 99                    3. *The Trial Court's Ruling Was Contrary to the*
                            *Manifest Weight of the Evidence*

¶ 100 As discussed earlier in this dissent, the trial court rejected the owner's claim that she had not given her husband permission to drive her trike home because, it said, her actions in getting on the motorcycle and allowing her husband to drive rendered doubtful the "self-serving" testimony of the owner and her husband. Aside from the trial court's failure to see that the acts of acquiescence he noted are not sufficient to constitute affirmative consent, the owner challenges the court's determination as against the manifest weight of the evidence. Because the majority erroneously concludes that the question of consent was conceded by the owner, it does not address the merits of the owner's argument. If the argument were properly addressed, the owner would prevail on it as well.

¶ 101 It is true, of course, that

"[a] reviewing court should not overturn a trial court's findings merely because it does not agree with the lower court or because it might have reached a different conclusion had it been the fact finder. The trial judge, as the trier of fact, is in a position superior to a reviewing court to observe witnesses while testifying, to judge their credibility, and to determine the weight their testimony should receive. Consequently, where the testimony is conflicting in a bench trial, the trial court's findings will not be disturbed unless they are against the manifest weight of the evidence." *Bazydlo v. Volant*, 164 Ill. 2d 207, 214-15 (1995).

It is also clear, however, that

"the fact finder may not arbitrarily or capriciously reject unimpeached testimony. Where the testimony of a witness is neither contradicted, either by positive testimony or by circumstances, nor inherently improbable, and the witness has not been impeached, that testimony cannot be disregarded by the trier of fact." *Id.* at 215.

¶ 102 In the case before us, the testimony of the owner and her husband was consistent and uncontradicted. No witnesses disputed their version of what occurred, and there was nothing about it that was inherently improbable. To the contrary, undisputed circumstances supported the scenario they described. There was no question that their evening progressed exactly as they described, with the husband taking the fob from the kitchen so he could prepare the bike for the couple's evening ride, that the bike belonged to the wife alone and that she drove it until

- 21 -

they reached their final stop a short distance from home, that the husband insisted on driving home after he had gotten "buzzed" at that final stop, that he took control of the vehicle and would not yield despite a heated argument in which the owner told him he could not drive because he was drunk and had no license, that the owner was powerless to stop him and did not want to have to walk home in the dark alone late at night, and that she told him to stop when the local police tried to pull him over. The husband's arrogant response on cross-examination ("she couldn't stop me, dude" because "I'm stronger than she is" and "how is she going to stop me? And she didn't have the fob. I did") provide an insight into the extent of the challenge the owner was facing on the evening in question.

¶ 103    The parties testified under penalties of perjury, and while the husband had a checkered driving record and might not have been candid with his spouse, there was nothing to suggest that he would lie under oath or that the owner, who had a home and was employed as a transit company driver, a position of responsibility, was not being completely candid and accurate when explaining what had taken place. The testimony did support the owner's position, to be sure, but that alone does not render it "self-serving" and unreliable. To hold otherwise given the complete absence of impeaching or contradicting evidence here would be tantamount to saying that the testimony of a party in interest is inherently unworthy of belief.

¶ 104    The only specific "fact" noted by the lower courts as inconsistent with the couple's version of what occurred is the appellate court's description of the husband's testimony regarding the sequence in which riders had to mount the vehicle. As I have noted earlier, however, the appellate court misread the record, and its characterization is simply wrong. Accordingly, the trier of fact should not have disregarded the couple's testimony. On the question of consent, the judgment it reached was not only erroneous as a matter of law but contrary to the manifest weight of the evidence.

¶ 105            D. *The Majority's Construction of the Statutes Yields an Absurd Result*

¶ 106    The majority's interpretation and application of the Illinois seizure and forfeiture statutes must be rejected for another reason as well: it yields an absurd result the legislature could not have intended. When the State initially seized the owner's trike, it did so on multiple grounds, including the fact that the husband had previously been convicted under section 6-303 of the Vehicle Code (625 ILCS 5/6-303 (West 2014)) for driving while license suspended or revoked. Had the vehicle been owned by the husband and not by her, she, as the spouse, could actually have filed a hardship petition and had title to the vehicle forfeited to her under the provisions of section 36-1(d) of the Criminal Code of 2012 (720 ILCS 5/36-1(d) (West 2012)). If certain conditions were satisfied and her petition were successful, title would have been placed in her name. *Id.* Accordingly, even if every other single fact about the incident were the same, the result could have been exactly the opposite of the one reached by the majority today. Because the owner actually owns the trike, she has now lost title to it even though she committed no offense. If her husband, the actual wrongdoer, had been the owner, the case could have ended with the trike being titled to her and the vehicle put right back in the couple's garage ready for another ride. This is not only nonsensical but manifestly unfair. The supreme court has an obligation to construe statutes in a manner that will avoid absurd, unreasonable, or unjust results that the legislature could not have intended. *People v. Hunter*, 2017 IL 121306, ¶ 28. The majority's disposition abandons that duty. Under Illinois law, the seizure and

forfeiture were improper. The trike should be returned to its owner.

¶ 107                 II. *The Majority's Disposition Is Incorrect Under the Eighth Amendment*

¶ 108       Even if the State could clear the statutory and evidentiary obstacles I have just set out, the seizure and forfeiture of the owner's trike would violate the excessive fines clause of the eighth amendment to the United States Constitution (U.S. Const., amend. VIII) and would still have to be set aside. In reaching a contrary conclusion, the majority's opinion applies the wrong legal framework, departs from long-followed precedent, and reaches a result that is incompatible with eighth amendment principles.

¶ 109       The eighth amendment reads: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." *Id.* It is based directly on article I, section 9, of the Virginia Declaration of Rights, which adopted verbatim language from the English Bill of Rights of 1689. *Browning-Ferris Industries of Vermont, Inc. v Kelco Disposal, Inc.*, 492 U.S. 257, 266 (1989). The pertinent language in the English Bill of Rights is, in turn, traceable to values found in Magna Carta. *United States v. Bajakajian*, 524 U.S. 321, 335 (1998); David Pimentel, *Forfeitures and the Eighth Amendment: A Practical Approach to the Excessive Fines Clause as a Check on Government Seizures*, 11 Harv. L. & Pol'y Rev. 541, 562 (2017). The protections afforded by the eighth amendment are thus as deeply rooted as any in our constitutional order. We must be vigilant in ensuring that those protections are honored and given effect.

¶ 110                 A. *The Majority Applies the Wrong Standards for Evaluating Claims*
*Under the Excessive Fines Clause in* In Rem *Civil Proceedings*

¶ 111       The meaning and application of the excessive fines clause of the eighth amendment presents a question of federal law on which the United States Supreme Court is, of course, the ultimate arbiter. The majority's opinion claims that "the standard for whether a forfeiture violates the federal excessive fines clause was first broadly set out by the United States Supreme Court in *United States v. Bajakajian*, 524 U.S. 321 (1998)." *Supra* ¶ 15. The disposition then discusses the *Bajakajian* standard; references earlier case law from Illinois in light of *Bajakajian*; and invokes authority from an intermediate court of review in Pennsylvania, a federal court in Virginia, and the United States Court of Appeals for the Second Circuit, in undertaking its analysis as to whether the forfeiture here crossed a constitutional line.

¶ 112                 1. *The Majority Is Wrong to Begin With* Bajakajian*:*
Austin *Provides the Proper Starting Point in* In Rem *Civil Proceedings*

¶ 113       As a preliminary matter, this case is different from *Bajakajian* in several key respects, not the least of which is that the forfeiture in *Bajakajian*, which involved currency, was sought in the context of a criminal prosecution against the criminal defendant personally for failure to report exported currency. The money was the defendant's, and the government wanted to take it in the criminal prosecution as part of his punishment for failure to properly report it. In contrast to the case before us here, *Bajakajian* was not an *in rem* civil proceeding and was not directed against property owned by someone who was not being criminally prosecuted and who had neither committed nor been found guilty of committing any crime.

¶ 114    The leading case on applicability of the eighth amendment excessive fines clause to *in rem* civil proceedings like this one is actually *Austin v. United States*, 509 U.S. 602 (1993). That case held for the first time that *in rem* civil forfeiture proceedings are subject to the limitations of the excessive fines clause where the statutes under which they are brought do not solely serve a remedial purpose but, rather, can only be explained as also serving either a retributive or deterrent purpose and thus constitute punishment. *Id.* at 621.

¶ 115    *In rem* civil forfeiture has a much different history than forfeiture in the context of a criminal case. Prior to *Austin*, the eighth amendment did not even extend to civil forfeitures. In any discussion regarding applicability of the eighth amendment to *in rem* civil forfeitures, *Austin* must therefore be our starting point. The State correctly cited *Austin* at the outset of the argument section of its brief. Inexplicably, the majority's opinion fails to mention it at all.

¶ 116    The United States Supreme Court itself has not spoken on the standards applicable to *in rem* civil forfeitures following *Austin*. *Austin* declined to articulate a specific test for determining whether an *in rem* civil forfeiture is constitutionally "excessive," leaving it to lower federal courts to consider that question in the first instance. *Id.* at 622.

¶ 117             2. *In the Wake of* Austin*, Illinois Adopted the* Zumeriz *Standard*

¶ 118    Failing to recognize the distinctions between *Austin* and *Bajakajian*, the majority's opinion relies heavily on *Bajakajian*'s standards as if that case were dispositive. It is not. As noted, the United States Supreme Court in *Austin* left it to lower courts to determine an appropriate test. Following *Austin*, some jurisdictions have taken the view that *Bajakajian*'s standards, developed in the criminal context, should be adopted for use when applying the eighth amendment in *in rem* civil forfeiture cases. This view is not universal. At least two other approaches have been adopted by courts around the country. Brent Skorup, *Ensuring Eighth Amendment Protection From Excessive Fines in Civil Asset Forfeiture Cases*, 22 Geo. Mason U. Civ. Rts. L.J. 427, 440 (2012).

¶ 119    One such approach is the "hybrid instrumentality-proportionality test" first formulated by a United States district court in California in a case called *United States v. 6625 Zumirez Drive*, 845 F. Supp. 725 (C.D. Cal. 1994). Skorup*, supra*, at 440. Our court expressly adopted the *Zumirez* standard in *People ex rel. Waller v. 1989 Ford F350 Truck*, 162 Ill. 2d 78, 89-90 (1994). That standard has since been applied consistently by the courts of Illinois, including the appellate court in the case before us. 2016 IL App (5th) 150035, ¶¶ 27-28; *People v. One 2005 Acura RSX*, 2017 IL App (4th) 160595, ¶ 20; *People v. 1998 Lexus GS 300*, 402 Ill. App. 3d 462, 466 (2010); *One 2000 GMC*, 357 Ill. App. 3d at 875-76 (2005); *People ex rel. Waller v. 1996 Saturn*, 298 Ill. App. 3d 464, 470 (1998). That is the test we should continue to apply here.

¶ 120             3. *The Majority's Discussion of the Pennsylvania Case*
             *and Precedent From Other Jurisdictions Is Flawed and Erroneous*

¶ 121    In the course of addressing the owner's eighth amendment arguments in the case before us, the majority spends a considerable part of its analysis discussing *Commonwealth v. 1997 Chevrolet*, 106 A.3d 836 (Pa. Commonw. Ct. 2014) (*en banc*). That discussion, and the discussion of case law from other jurisdictions, is undertaken with little, if any, regard for how the standards applied by those courts compares to the *Zumeriz* standard adopted in Illinois. In

so doing, it adds needless uncertainty to what already is a challenging area of the law. Adding to that uncertainty is that the decision in the Pennsylvania case to which the majority gives such attention was subsequently appealed to the Pennsylvania Supreme Court. While affirming the lower reviewing court's decision to reverse and remand the challenged forfeiture order, the Pennsylvania Supreme Court did so only after formulating a different and considerably more elaborate analytical framework. *Commonwealth v. 1997 Chevrolet & Contents Seized From Young*, 160 A.3d 153 (Pa. 2017). If the lower court's opinion no longer represents controlling law in Pennsylvania, it is difficult to see why we are following it here. Again, our guidepost is and should be the *Zumirez* standard adopted by this court in *1989 Ford F350 Truck*, 162 Ill. 2d 78, and consistently followed by the appellate court.

¶ 122                    4. *Application of the* Zumeriz *Factors Mandates That*
*This Forfeiture Be Reversed*

¶ 123                    (a) *The Factors and How They Should Be Applied*

¶ 124    Under the *Zumeriz* standard, a court must weigh three factors when determining whether an *in rem* civil forfeiture violates the excessive fines clause of the eighth amendment: (1) the inherent gravity of the offense compared with the harshness of the penalty, (2) whether the property was an integral part of the commission of the crime, and (3) whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use. *Id.* at 90.

¶ 125    These foregoing factors are not exhaustive. The inherent case-by-case nature of these cases "precludes simple cookbook application of any method of review." *Id.* A trial court may consider additional factors not specifically listed. *Id.* In addition, when applying the first factor, "inherent gravity of the offense compared with the harshness of the penalty," the court must keep in mind that its focus must be on the conduct of the person whose property is being confiscated. That is so because the eighth amendment is addressed to the punitive aspect of the forfeiture and the property's owner is the person who will suffer the punishment. *Zumirez*, 845 F. Supp. at 733 n.4; *Austin*, 509 U.S. at 615; *1996 Saturn*, 298 Ill. App. 3d at 471-72.

¶ 126    The trial court did not mention any of these principles when rendering its judgment. When the principles are properly applied to the case before us, it is clear that the appellate court was correct when it concluded that the forfeiture of the owner's trike violated the excessive fines clause.

¶ 127                    (b) *Only One of the* Zumeriz *Factors Clearly Supports the State*

¶ 128    Of the three core *Zumeriz* factors, only the second one, whether the owner's property was an integral part of the commission of the crime, clearly supports the State's position. Of course, the owner herself was not actually convicted of any offense, nor could she have been for the reasons explained earlier in this dissent. The only criminal offense here was the husband's aggravated DUI, which involved driving under the influence when his driving privileges had been revoked or suspended for having previously driven under the influence. That is the offense on which the seizure and forfeiture were predicated, and it is the one relevant to assessment of factor two. The owner's trike was obviously integral to that offense. The owner conceded the point in the appellate court, the appellate court so found (2016 IL App (5th) 150035, ¶ 38), and there is no basis for us to hold otherwise.

- 25 -

¶ 129      Factor three, whether the criminal activity involving the subject property was extensive in terms of time and/or spatial use, adds little to the analysis. This part of the test is similar to the second factor in that it touches on the connection between the property and the criminal conduct. It looks not only at whether the property was an integral part of the criminal activity but whether the "property played an extensive or pervasive role in the commission of the crime." *Zumeriz*, 845 F. Supp at 734; *1996 Saturn*, 298 Ill. App. 3d at 473. Again, the only criminal activity in this case was the husband's aggravated DUI. As noted with respect to the second factor, the vehicle was unquestionably an essential part of that offense. However, the offense itself was extremely limited in duration and scope. While the owner had owned the trike for several years prior to the husband's DUI arrest, there is no evidence that the husband had ever used it in an unlawful manner on any other occasion, and on the night in question here, his unlawful operation of the trike lasted no more than a couple of minutes and covered only six-tenths of a mile. In no sense could the criminal activity involving the trike be regarded as extensive.

¶ 130                           *(c) When the Inherent Gravity of the Offense Is Properly*
*Measured Against the Harshness of the Penalty, the Forfeiture*
*Cannot Be Sustained*

¶ 131                           *(i) The Majority Erroneously Focused on the Husband's*
*Offense Rather Than the Conduct of the Owner*

¶ 132      Of much greater significance is that factor one, inherent gravity of the offense compared with the harshness of the penalty, strongly favors the owner. As explained earlier, for purposes of this prong of the analysis, the focus is on the culpability of the owner seeking return of the property. *Zumirez*, 845 F. Supp. at 733 n.4. In making its assessment, a court may consider whether the underlying offense was violent or nonviolent, whether the offense was completed or merely attempted, and whether the conduct was intentional or merely negligent. Courts should also consider whether the person seeking return of the property has been convicted of the criminal act or acts underlying the forfeiture, whether the person was ever charged with any crime, or whether that person was charged but acquitted of the act or acts underlying the forfeiture. The gravity of the person's conduct decreases in each of the three situations. *Id.* at 733.

¶ 133      In this case, the underlying offense, aggravated DUI, was unquestionably serious, and driving under the influence often has tragic consequences, but the offense was committed by the husband, not by the owner. Where, as here, the owner herself was not convicted of the criminal acts underlying the forfeiture, courts "must be careful to focus only on the inherent gravity of the offensive conduct engaged in by the [owner herself], rather than the inherent gravity of the offense or offenses that the government had probable cause to believe were committed on the property." *Id.*; *People v. One 2005 Acura RSX*, 2017 IL App (4th) 160595, ¶ 23. The majority faults the owner's counsel for vacillating on this point during oral argument, but there is no question that this is what the constitutional standard requires. We abandon our obligation to insure a just, sound, and uniform body of law if we disregard controlling principles simply because of a perceived stumble by appellate counsel.

¶ 134      Not only was the owner herself not charged or convicted of the underlying offense, she was not convicted of any offense. Contrary to the majority's assertions to the contrary, there was

not even any evidence that she knew or should have known that the reason her husband had no license was because of a prior DUI and that he would therefore be guilty of aggravated DUI when she acquiesced in his drunken demand to drive the trike home.

¶ 135      The State argues that we should hold the owner responsible for her husband's criminal conduct under an accountability theory, but if it had thought there was sufficient evidence to charge her under that theory, it could have brought such charges. It did not do so. Based on the record before us, that decision is hardly surprising. It is difficult to see how such a charge or any criminal charge against the owner could have been successfully prosecuted. Indeed, because the owner was married to her husband, her conduct in allowing him to drive while under the influence could not even subject her to prosecution for a misdemeanor under section 6-304.1 of the Vehicle Code (625 ILCS 5/6-304.1 (West 2014)). As a matter of law, she committed no wrongdoing.

¶ 136      The most the owner can be said to have done is allow her belligerent husband to drive a couple of minutes to their house in the middle of the night even though he was drunk and had no license, a trip which he made with no injury to any person or property and which she was powerless to stop. By riding along, she avoided a possibly unsafe walk home and was able to watch over her property. And to the extent her presence may have deterred her husband from heading out into the night, alone, "to who knows where," she may have helped avert actual injury to the public, her husband, and her trike.

¶ 137      In the end, perhaps the owner's real "offense" was simply her poor decision to make the Corner Place sports bar the last stop on their otherwise uneventful ride through the country. Sports bars, Friday nights, and chronic drunks can be an invitation for trouble, even when the wife is there as a designated driver. Bad choices, however, are not a crime. The owner committed no crime. Her husband is the one who broke the law. His violation was very serious indeed, and he is the one who deserved the punishment. Had the State's central concern here really been with cracking down on drunk drivers, a range of punishments was at its disposal, including imprisonment. As the majority points out, he could have been sentenced to up to three years in the Department of Corrections and fined up to $25,000. I fail to see what legitimate governmental purpose is served by going after his wife's $35,000 vehicle as well. Justice does not need to confiscate her trike to subsidize the Robinson Police Department (see 720 ILCS 5/36-2(h) (West 2012)) in order to feel served. If the State and the trial court thought harsher punishment was due, the husband should not have been given probation.

¶ 138                  (ii) *The State's Arguments Regarding Deterrence Are Untenable*

¶ 139      In resisting this conclusion, the State suggests that the seizure can be justified, in part, because it may advance the remedial purpose of deterring repeat drunk drivers and impairing their access to the roadways. The cases it cites for this proposition, however, both involved situations where the forfeited vehicles were owned by the individuals who committed the drunk driving offenses. See *1998 Lexus GS 300*, 402 Ill. App. 3d 462; *One 2000 GMC*, 357 Ill. App. 3d 873. Neither addressed circumstances like those present here, where the seized vehicle belonged to someone else who committed no crime and, until this single, brief incident, had apparently been entirely successful, on her own, without State intervention, in deterring the actual offender from using her vehicle on public roads in violation of the law. Considering the husband's background, that was surely no small achievement. If the trike were returned to the

owner, as it should be, it seems highly unlikely she would permit a recurrence of these unfortunate events.

¶ 140                              (iii) *The Majority's Attempt to Diminish the Financial*
                              *Impact of the Forfeiture by Faulting the Owner for*
                              *Not Making a Better Record Is Meritless*

¶ 141        Aside from the fact that the owner is employed as a transit company driver, we know little of her personal financial circumstances. For most people in the owner's part of the Illinois, however, the loss of a $35,000 motor vehicle would unquestionably be a harsh and heavy burden to bear. The majority attempts to undercut this factor by questioning the trike's value and faulting the owner for not providing evidence of its value as of the time of the forfeiture hearing. *Supra* ¶ 29. My colleagues' position, however, is wholly without merit.

¶ 142        As noted earlier, the record established that the trike was a 2010 model that had been purchased new for $35,000. At no time in the trial court did the State challenge this valuation or dispute that the vehicle retained substantial value at the time it was seized in the owner's driveway in 2014. The owner therefore had no reason to think that value at the time of forfeiture was at issue, and the State cannot now be heard to complain that it was somehow denied an opportunity to show that the trike's value was different than the figure presented by the owner.

¶ 143        The majority's treatment of the valuation issue must be rejected for another reason as well. In the absence of specific evidence of value as of the time of forfeiture, the majority effectively treats the vehicle's value as zero. That is patently wrong. The majority can take judicial notice that vehicles generally lose value over time, but if it wants to do that here, notwithstanding the lack of a challenge to valuation by the State during trial, it should not make wholly unsubstantiated assumptions. There are reliable, readily available guides to vehicle valuation, including the NADA guide, which has been recognized by Illinois courts. See *Deverman v. Country Mutual Insurance Co.*, 56 Ill. App. 3d 122, 123 (1977). According to that source, the vehicle's current retail value in the Robinson area is in the range of $16,000 to $21,000. NADA Guides, *2010 Harley-Davidson FLHTCUTG Triglide Ultra Classic Prices*, http://www.nadaguides.com/Motorcycles/2010/Harley-Davidson/FLHTCUTG-TRIGLIDE-UL-CLSC-1687cc/Values (last visited Feb. 2, 2018). It was surely higher in 2014. And while less than the original purchase price, $16,000 to $21,000 remains a considerable sum, whose sudden loss would be an extremely harsh burden. There is no hint in the record that the trial court thought otherwise. So far as the court provided any explanation for its ruling, it seems clear that uncertainty as to the vehicle's significant value played no role in the decision it made.

¶ 144                              B. *Citing Inapposite Principles, the Majority's Analysis Turns the*
                              *Constitution on Its Head—The Eighth Amendment Requires*
                              *This Forfeiture to Be Set Aside, Not Upheld*

¶ 145        Finally, the majority cannot justify the result it reaches through its repeated resort to the principles that we have a duty to construe statutory enactments as constitutional whenever possible (*supra* ¶¶ 12, 32) and that the burden of establishing that a statute is unconstitutional lies with the challenger (*supra* ¶ 30). Those principles apply where a statute is being

- 28 -

challenged as unconstitutional on its face, as *People v. Minnis*, 2016 IL 119563, and *People v. Rizzo*, 2016 IL 118599, the very cases cited by the majority, demonstrate. This, of course, is not such a case. The owner here makes no claim that the governing state statutes are facially unconstitutional. So far as the constitution is concerned, her argument is simply that, under the particular facts of this case, the seizure and forfeiture of her trike cross the line established by the excessive fines clause and must therefore be set aside. The cases cited by the majority are therefore inapposite. If the majority were truly interested in upholding the principles contained in the United States Constitution, the way for it to do so would be by properly following the precedent established by the United States Supreme Court and the courts of Illinois and to hold, as the appellate court did, that the seizure and forfeiture of the owner's trike contravened the excessive fines clause of the eighth amendment.

¶ 146                                          CONCLUSION

¶ 147        For the foregoing reasons, the owner is entitled to return of her vehicle under both state law and the federal constitution. We should order the State to give it back to her. Because the majority holds otherwise, I dissent.

¶ 148        JUSTICE BURKE, dissenting:

¶ 149        I agree with Chief Justice Karmeier that the trial court's ruling sustaining the forfeiture of claimant's motorcycle pursuant to Illinois's civil forfeiture statute (720 ILCS 5/36-1 (West 2012)) was against the manifest weight of the evidence. Like Chief Justice Karmeier, I believe that the trial court erred in rejecting claimant's statutory defense that she did not consent to her husband driving her motorcycle. The court improperly equated acquiescence with consent and, in doing so, unfairly punished claimant for failing to prevent her husband from driving while intoxicated. I therefore dissent from the majority's holding that claimant conceded the issue of consent and that the State established the requisite statutory elements for forfeiture.

¶ 150        I also disagree with the majority's holding that, based on the record before us, claimant failed to establish an eighth amendment violation. Unlike a majority of my colleagues, I would not address the merits of the eighth amendment claim in the absence of a proper factual record. In my view, this court should remand the cause to the trial court with directions to hold a hearing on claimant's eighth amendment claim and to make appropriate findings of fact. Accordingly, I respectfully dissent from the majority's ruling rejecting the eighth amendment claim on the merits.

¶ 151        As the majority notes, claimant's eighth amendment claim is an as-applied constitutional challenge. A party raising an as-applied challenge must show that a statute violates the constitution as applied to the specific facts and circumstances of the challenging party. See *People v. Thompson*, 2015 IL 118151, ¶ 36. Due to the fact-dependent nature of such a claim, "it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *Id.* ¶ 37. The appropriate venue for developing the facts necessary for resolution of an as-applied constitutional claim is the trial court, not a reviewing court. *Id.* ¶ 38.

¶ 152        A court's analysis of an excessive fines challenge involving the forfeiture of a vehicle entails different considerations than an analysis of whether the vehicle is subject to forfeiture in the first instance. A court considering an eighth amendment challenge to an *in rem* civil

forfeiture must weigh " '(i) the inherent gravity of the offense compared with the harshness of the penalty; (ii) whether the property was an integral part of the commission of the crime; and (iii) whether the criminal activity involving the defendant property was extensive in terms of time and/or spatial use.' " *People ex rel. Waller v. 1989 Ford F350 Truck*, 162 Ill. 2d 78, 89-90 (1994) (quoting *United States v. Real Property Located at 6625 Zumirez Drive*, 845 F. Supp. 725, 732 (C.D. Cal. 1994)). These factors are not exclusive. Indeed, this court has explicitly advised trial courts to avoid an inflexible approach and to consider other relevant factors on a case-by-case basis. See *id.* at 90.

¶ 153    It has been held that an excessive fines analysis may include consideration of the following facts: whether the claimant was negligent or reckless in allowing the illegal use of her property, the extent of the claimant's involvement in the illegal activity, the harm caused by the illegal activity, the duration of the illegal activity, the possible penalties that would result from conviction of the underlying offense, the nature of the forfeited property, the monetary value of the property, the intangible, subjective value of the property, and the hardship to the claimant, including the effect of the forfeiture on the claimant's family and finances. See, *e.g.*, *Zumirez Drive*, 845 F. Supp. at 733; *People v. One 2005 Acura RSX*, 2017 IL App (4th) 160595, ¶¶ 20-32; *People v. 1998 Lexus GS 300*, 402 Ill. App. 3d 462, 466-67 (2010); *People v. One 2000 GMC*, 357 Ill. App. 3d 873, 876-79 (2005); *People ex rel. Waller v. 1996 Saturn*, 298 Ill. App. 3d 464, 470-74 (1998); *People v. $5,970 United States Currency*, 279 Ill. App. 3d 583, 592-93 (1996).

¶ 154    In this case, claimant raised her eighth amendment claim for the first time in a motion to reconsider the trial court's forfeiture order. Claimant's motion was filed after the forfeiture hearing took place. Accordingly, the only issues that were litigated at the forfeiture hearing were whether the statutory elements for forfeiture were established. No factual record was developed on the eighth amendment question, nor did the trial judge make any findings as to the seriousness of claimant's conduct, the harm or lack thereof caused by her conduct, the extent of her involvement in her husband's crime, the monetary value of the motorcycle, the intangible value of the motorcycle, or any other relevant eighth amendment factors. Nevertheless, the trial court ruled on the merits of her claim, denying claimant relief. The court's written ruling consists of three conclusory sentences and contains no analysis or discussion of why the forfeiture was not constitutionally excessive as applied to the totality of the circumstances. This was error on the part of the trial court.

¶ 155    The majority now compounds the trial court's error, rejecting claimant's constitutional claim on the merits even though the facts necessary for a proper analysis of that claim are completely absent from the record. The majority's decision to reach the merits under these circumstances is a troublesome departure from our settled precedent. This court has consistently held that a trial court's ruling on the merits of an as-applied constitutional claim in the absence of a sufficient factual record is premature. See *People v. Minnis*, 2016 IL 119563, ¶ 19; *People v. Rizzo*, 2016 IL 118599, ¶ 26; *People v. Mosley*, 2015 IL 115872, ¶¶ 47-48; *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 228 (2010); *In re Parentage of John M.*, 212 Ill. 2d 253, 268 (2004); see also *City of Chicago v. Alexander*, 2017 IL 120350, ¶¶ 78-92 (Kilbride, J., dissenting). We have also held that it is inappropriate for a reviewing court to consider the merits of an as-applied constitutional claim where the record is not sufficiently developed. See *Minnis*, 2016 IL 119563, ¶ 19 (refusing to consider an as-applied challenge in the absence of an evidentiary hearing); *Thompson*, 2015 IL 118151, ¶¶ 37-39 (holding that the

defendant forfeited his as-applied challenge by raising it for the first time on appeal and refusing to consider the claim based on an insufficient factual record).

¶ 156    In a stark departure from this precedent, the majority is now ruling against claimant on the merits of her eighth amendment claim while acknowledging that the record lacks the necessary facts for an eighth amendment analysis. The majority holds the lack of a record against claimant, concluding that she did not sustain her burden of presenting a complete record on appeal. This is fundamentally unfair. In essence, the majority is holding that claimant's as-applied claim, although raised for the first time in a motion to reconsider, is timely and should be resolved on the merits despite the fact that claimant never had an opportunity to present evidence in support of her constitutional claim in the trial court. Holding the lack of a record against claimant while rejecting her as-applied challenge on the merits violates principles of fundamental fairness and implicates due process concerns. See *In re Parentage of John M.*, 212 Ill. 2d at 268 (citing *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510, 555-56 (1996) (McMorrow, J., dissenting)).[8]

¶ 157    Consistent with our settled case law, this court should refrain from addressing claimant's as-applied claim on the merits and remand the cause with directions for the trial court to hold an evidentiary hearing on the eighth amendment issue.

¶ 158    For the foregoing reasons, I respectfully dissent.

---

[8]Indeed, even the State recognized in its petition for leave to appeal that more fact finding is necessary before a reviewing court can address the eighth amendment claim on the merits.